OWEN F. WAGENER *et al.*, Plaintiffs-Appellants, v. EDWARD J. PAPIE, Defendant-Appellee (John S. Brennan *et al.*, Intervenors-Appellees).

First District (3rd Division)   Nos. 1—91—0860, 1—91—2346 cons.

Opinion filed February 3, 1993.

Steinberg & Steinberg, Ltd., of Chicago (Frances S. Steinberg, Gregory A. Tumbarello, and Charles M. Steinberg, of counsel), for appellants.

Gordon & Glickson, P.C., of Chicago (Stuart Smith, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

On June 4, 1987, Edward J. Papie, defendant in this case, filed an action against Peggy Wagener for recovery of a ring which he gave her when the couple became engaged to be married. On July 7, 1987, plaintiffs Owen F. Wagener, Lois K. Wagener and Peggy A. Wagener filed this action and gave notice of *lis pendens* with the Cook County recorder of deeds to recover property which they previously conveyed to defendant. On November 9, 1987, defendant filed a counterclaim against plaintiffs. The trial court later granted plaintiff Peggy Wagener summary judgment on count III of the above counterclaim on the basis that defendant terminated the couple's engagement and that plaintiff Peggy Wagener was therefore entitled to keep the engagement ring. On January 28, 1988, John S. and Peggy A. Brennan, third-party purchasers of the property, filed an intervening complaint to quiet title and to obtain specific performance. The Brennans' action is still pending.

On February 29, 1988, plaintiffs filed an 11-count amended equitable complaint against defendant to recover the subject property and to obtain damages at law. In addition, plaintiff Peggy Wagener, independently and in the alternative, sought an equitable half-interest in the real estate, profits and damages at law for defendant's alleged breach of promise to marry. Plaintiffs and defendant filed cross-motions for summary judgment. On January 31, 1991, the trial court granted defendant's motion for summary judgment and denied plaintiffs' cross-motion for summary judgment. The trial court also denied plaintiff Peggy Wagener an equitable portion of defendant's interest and money damages at law for defendant's breach of promise to marry. Defendant then moved for sanctions pursuant to Illinois Supreme Court Rule 137. (134 Ill. 2d R. 137.) Plaintiffs moved to strike defendant's motion and filed a cross-motion under the same rule. (134 Ill. 2d R. 137.) The trial court denied both motions. Subsequently, plaintiffs and defendant appealed and both appeals were consolidated by this court. We affirm in part, reverse in part and remand.

The issues before this court for review are: (1) whether the trial court erred in denying plaintiffs' motion for summary judgment; (2) whether the trial court erred in granting defendant's motion for summary judgment; (3) whether the trial court abused its discretion in denying defendant's motion for sanctions pursuant to Illinois Supreme

Court Rule 137 (134 Ill. 2d R. 137); and (4) whether the trial court abused its discretion in denying plaintiffs' motion for sanctions pursuant to Illinois Supreme Court Rule 137. 134 Ill. 2d R. 137.

This cause arises out of the engagement of plaintiff Peggy Wagener to defendant. Peggy's parents, Owen and Lois Wagener, in anticipation of their daughter's marriage, sold the family home to defendant, their future son-in-law, as and for the couple's marital home. Defendant refused to marry Peggy and then resold the subject property for a profit.

The subject property was located at 1714 Walnut Street in Wilmette, Illinois. The property included a residence which had been built by plaintiff Owen Wagener's father and had been used first as his family home and later by plaintiffs as their family home.

On April 19, 1986, plaintiffs Owen and Lois Wagener entered into a real estate contract to purchase a smaller home for themselves in Glenview, Illinois. Owen and Lois Wagener then listed the Walnut Street property for sale to the general public through a realtor in July of 1986. The property was listed for approximately three months but the Wageners did not receive any offers to purchase the home. In late November of 1986, they elected to take the property off of the market.

In September of 1986, defendant and Peggy Wagener became engaged. The couple then began looking for a home which they would live in after their marriage. Ultimately, discussions took place between Owen Wagener and defendant concerning the sale of the subject property to defendant for use as the engaged couple's marital home. In January of 1987, Owen and Lois Wagener agreed to convey title to the property to defendant at a price far below its market value.

Owen Wagener prepared a contract for the sale of the property. The contract listed Owen and Lois Wagener as the sellers and defendant as the purchaser. Owen Wagener maintained that he agreed to sell the property to defendant rather than to his daughter, Peggy Wagener, because defendant was more likely to be able to obtain a mortgage commitment than his daughter, since she had an erratic work history and inconsequential assets. The parties used the preprinted real estate sales contract traditionally employed for the sale of property on the North Shore. The standard contract provided that a purchaser must tender 10% of the price of the property for earnest money. When Owen Wagener prepared the contract, however, he deliberately struck the 10% earnest money requirement from the agreement and replaced it with a provision requiring defendant to pay nominal earnest money of $1,000 rather than $16,000 or 10%. The

customary percentage of the cost of property required for earnest money was well known to defendant, who had taken at least one class in real estate transactions. Owen Wagener also asked that defendant execute a lease along with the contract to purchase the subject property. Owen Wagener later testified that he prepared the lease as a "safety valve" so that defendant could remain as a tenant on the subject property for a short period of time in the event that the marriage did not take place. The rent for the months of February and March was fixed at $250 and at $1,250 per month thereafter. Defendant executed both the real estate contract and the lease.

Defendant then applied to Provident Financial for a mortgage, disclosing that he was "about to be married" and that he was buying a home from a member of the family. Provident Financial had the property appraised and the appraiser recognized that it was worth more than the $160,000 purchase price.

Defendant later testified that he understood that the sale of the property was conditioned upon the consummation of the marriage. Defendant told the court, "it was understood *** we were getting married." Defendant also stated that it was his understanding that he was "taking title, as it was Owen's, and when I married his daughter, it would be joint property and she would have half of it."

The couple took possession of the property prior to the closing in order to redecorate the home. Peggy Wagener moved her furniture and personal belongings into the house and defendant placed his Chicago condominium on the market for sale.

On April 4, 1987, two days prior to the scheduled closing, Father Raymond Dompke, the Papies' parish priest, informed plaintiffs that he would not officiate at the scheduled wedding ceremony on April 9, 1987. The priest decided to postpone the scheduled Catholic ceremony on the basis of his impressions of the couple which he obtained during their requisite premarital counseling sessions.

Peggy Wagener testified that she responded to Father Dompke's action by asking him if she and defendant could marry in a civil ceremony and have their marriage sanctioned by the Catholic church at a later date. The priest assured her that the church would sanction their civil marriage by performing a Catholic marriage ceremony after the couple obtained more counseling. Later that same day, Lois and Owen Wagener made an unsuccessful attempt to convince Father Wolff, who was their parish priest, to perform the religious ceremony.

Peggy Wagener testified that on the afternoon of April 7, 1987, she and defendant had a long conversation. She told the court that on that date, she informed defendant that Father Dompke refused to

perform the scheduled wedding ceremony, but that he agreed to solemnize a civil marriage between them later in a Catholic ceremony. Peggy Wagener also testified that she told defendant that her parents were trying to convince Father Wolff to perform a Catholic ceremony on the scheduled wedding date. Owen and Lois Wagener maintained that defendant knew that they were trying to convince their own parish priest to proceed with the scheduled Catholic wedding ceremony. Peggy further testified that as of April 7, 1987, defendant had not told her that he did not intend to marry her.

Defendant testified that he responded to the news of Father Dompke's refusal to officiate at the scheduled wedding ceremony by asking Peggy Wagener to telephone him immediately and to convince him to perform the ceremony as planned, but that she did not respond to his request. Defendant testified that he broke his engagement to Peggy Wagener that evening because she could not decide whether or not she wanted to marry him four days prior to the scheduled wedding ceremony. Defendant testified that he then left the Wagener home without speaking to Owen and Lois and that he did not speak to them until the date of the closing.

Defendant testified that as of April 7, 1987, it was obvious to all of the parties that there was not going to be a Catholic wedding ceremony and that neither Owen nor Lois Wagener spoke to him about having a civil wedding prior to the closing. Defendant maintained that at that time, he had no desire to proceed with the closing and that on the evening of April 7, 1987, his mother, Margaret Papie, sought to verify from Lois Wagener that defendant did not have to purchase the subject property since there would be no wedding. Margaret Papie testified that she was advised by Lois Wagener that defendant would have to go through with the closing. Margaret Papie told the court that after speaking to Lois, she advised her son that he would have to proceed with the closing.

Defendant recalled that when he arrived at the closing, he asked Edward L. Rosen, counsel for Owen Wagener, what would happen if he did not close on the contract for the sale of the subject property. Defendant testified that Rosen told him that his refusal to close would have the following consequences: (1) defendant would default under his loan arrangement with the mortgage; (2) defendant would lose his application fee and points paid; (3) defendant would incur the fees generated at the title company for the closing; and (4) defendant would be accountable to Owen Wagener if Wagener chose to enforce the contract. Defendant testified that he elected to go forward with the closing in light of the above-mentioned alternatives.

The closing on the Wilmette home proceeded as scheduled. Plaintiffs testified that at that time, they believed that there would be a civil wedding ceremony two days later. Plaintiffs further testified that as of the date of the closing, Peggy Wagener and defendant were still engaged to be married, that Peggy continued to wear her engagement ring and that defendant had not asked her to return the ring. Owen and Lois Wagener proceeded with the real estate closing and transferred title to the property to defendant.

Peggy Wagener testified that after defendant, Owen Wagener and Rosen left the closing, she and defendant drove toward downtown Chicago in defendant's car. Peggy further testified that while she was in the car, she told defendant how happy she was that they were homeowners. Peggy also told the court that defendant remained silent as she discussed the possibility of their being married in a civil ceremony. Peggy testified that upon reaching the building in which she worked, defendant told her that there wasn't going to be a wedding and that he never loved her. Peggy recalled that defendant said: "[H]e would grow to resent me if he ever married me; that he wasn't attracted to me and never had been, he couldn't quite understand what people saw in me, and that if I ever planned to be a success in this world, I better work pretty damn hard because I wasn't going to make it by my looks." Peggy Wagener maintained that defendant then asked her to return the engagement ring. Peggy Wagener testified that she then told Lois Wagener that defendant refused to marry her.

That afternoon, Owen Wagener contacted the Chicago Hilton Hotel and cancelled the scheduled wedding reception. Defendant's mother confirmed that guests were contacted on that same date. Defendant and his sister, Peggy Papie, traveled to Africa on April 9, 1987. This trip would have been defendant and plaintiff Peggy Wagener's honeymoon.

Upon defendant's return from Africa, Owen Wagener met with him and sought to return the purchase monies and any other related costs defendant may have incurred in exchange for title to the subject property. In addition, Owen asked defendant to pay $755.55, which defendant admitted owing for utilities and related costs he incurred while residing on the subject property. Defendant responded by physically assaulting Owen and demanding the return of the engagement ring that he had given Peggy. Around or about the first week in May of 1987, defendant refused to convey the subject property to the Wageners in exchange for a refund of the purchase price. At that time,

defendant told Owen Wagener that he would have to pay $215,000 in exchange for title to the subject property.

On May 4, 1987, defendant, by his attorney, served Peggy Wagener with a written demand that she return the engagement ring to defendant. Said writing did not allege that Peggy had broken the engagement or refused to marry defendant.

On June 3, 1987, defendant placed the subject property on the market for $265,000, or $105,000 more than he paid plaintiffs Owen and Lois on April 8, 1987. On June 10, 1987, defendant obtained a written offer from John and Peggy Brennan, for $260,000, a full $100,000 more than he had paid his future in-laws 62 days earlier. The above contract, negotiated at arm's length, required *bona fide* earnest money of $26,000 or 10% of the price of the property.

On June 4, 1987, defendant filed an action against Peggy Wagener for the return of the engagement ring, claiming for the first time that she had terminated the engagement on April 7, 1987. On July 7, 1987, plaintiffs filed a *lis pendens* with the Cook County recorder of deeds in addition to the present action to recover the subject property from defendant. On November 9, 1987, defendant filed a three-count counterclaim against plaintiffs. The trial court later granted plaintiff Peggy Wagener summary judgment on count III of the counterclaim on the basis that defendant terminated the couple's engagement and she was thus entitled to keep the engagement ring. On February 29, 1988, plaintiffs amended their complaint to include the following equitable theories as bases for the recovery of the subject property: rescission and restitution based upon the failure of a conditional gift; fraudulent concealment or innocent material misrepresentation; imposition of a constructive trust based upon unjust enrichment; breach of a fiduciary duty; abuse of a confidential relationship or fraudulent concealment; imposition of resulting trust on the *res* based upon the presumed intention of the parties and reformation of the real estate contract based upon mistake. Plaintiff Peggy Wagener, independently and in the alternative, sought an equitable half interest in the subject property and defendant's profits, as well as damages at law for defendant's "breach of promise to marry."

Plaintiffs and defendant moved for summary judgment. After numerous depositions upon the cross-motions for summary judgment on all 11 counts of plaintiffs' amended complaint, the trial court denied plaintiffs' motions for summary judgment and granted summary judgment in favor of defendant on the basis that plaintiffs could not reform the written real estate transaction documents by "clear and convincing evidence" as a matter of law. The trial court also denied

plaintiff Peggy Wagener an equitable portion of defendant's profits from the sale of the property and money damages at law for defendant's breach of promise to marry.

Defendant then moved to strike plaintiffs' motion for summary judgment and to impose sanctions upon plaintiffs pursuant to Illinois Supreme Court Rule 137. (134 Ill. 2d R. 137.) Plaintiffs then moved to strike defendant's motion for summary judgment and moved to impose sanctions upon defendant under Supreme Court Rule 137. (134 Ill. 2d R. 137.) After a hearing, defendant's motion was denied, at which time the court also summarily denied plaintiffs' motion for sanctions and expressly admitted on the record that plaintiffs' motion was never read or otherwise heard. Plaintiffs and defendant appealed. The appeals were consolidated by this court. The orders appealed were entered in accordance with Illinois Supreme Court Rule 304(a) as the complaint by the intervenors is still pending. 134 Ill. 2d R. 304(a).

First, we will address the issues of whether the trial court's rulings on the parties' motions for summary judgment were proper. Defendant alleges that the trial court's rulings on both motions for summary judgment were proper. Plaintiffs contend that the trial court erred in denying their motion for summary judgment and in granting defendant's motion for summary judgment.

Summary judgment is a drastic and extraordinary remedy. (*Anest v. Bailey* (1990), 198 Ill. App. 3d 740, 745, 556 N.E.2d 280, 282.) Summary judgment should be awarded with caution so as not to preempt a party's right to a jury trial or its right to demonstrate a factual basis for a case where a question of material fact may exist. (*Palomar v. Metropolitan Sanitary District of Greater Chicago* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071; *Decatur Construction, Inc. v. Central Illinois Public Service Co.* (1974), 16 Ill. App. 3d 1056, 1059, 307 N.E.2d 431, 433.) When reasonable persons disagree concerning the facts of a case, the trial court should deny motions for summary judgment and allow all disputed facts and inferences to be resolved by a trial. (*Palomar*, 225 Ill. App. 3d at 188, 587 N.E.2d at 1071.) "[S]ummary judgment is not a procedural tool intended to be used as a means of weighing conflicting issues of fact." *Anest*, 198 Ill. App. 3d at 745, 556 N.E.2d at 282.

In the present case, the trial court's denial of plaintiffs' motion for summary judgment was proper because there are material issues of fact. We conclude that the trial court erred in granting defendant's motion for summary judgment for the same reason.

Plaintiffs maintain that the following factual scenario occurred. Plaintiffs argued that defendant knew that the sale of the subject property to him was conditioned upon the consummation of his marriage to plaintiff Peggy Wagener, and that he would later convey a one-half interest in the property to her after their marriage. Plaintiffs alleged that on April 7, 1987, after Father Dompke refused to perform the wedding ceremony as planned, defendant knew that Owen and Lois were trying to convince Father Wolff to perform a Catholic ceremony on the scheduled wedding date and that defendant did not refuse to be married in a civil ceremony in the alternative. Plaintiffs maintained that defendant did not inform them that he did not intend to marry Peggy prior to the closing, and that he broke his engagement to her after he obtained title to the subject property. Plaintiffs also alleged that defendant admitted that he did not request the return of the engagement ring at any time prior to or during the closing on April 8, 1987. Peggy Wagener testified that defendant requested the return of the engagement ring after the closing.

Defendant maintains that the following factual scenario occurred. Defendant testified that he responded to the news that Father Dompke refused to perform the wedding ceremony on the scheduled date by asking Peggy Wagener to call Father Dompke immediately and convince him to perform the ceremony, but that Peggy did not respond to his request. Defendant further testified that he broke his engagement to Peggy Wagener that evening because she could not make up her mind whether or not she wanted to be married. Defendant testified that as of April 7, 1987, it was obvious to all of the parties that there was not going to be a Catholic wedding and that prior to the closing, neither Owen nor Lois Wagener spoke to him about having a civil ceremony.

■ Since material facts are disputable, we find that the trial court's denial of plaintiffs' motion for summary judgment was proper and we affirm the trial court's ruling on the motion. In addition, we conclude that the trial court erred in granting defendant's motion for summary judgment for the same reason. Specifically, we find that the following genuine issues of material fact exist: (1) whether the subject transaction was conditioned upon the occurrence of a marriage between plaintiff Peggy Wagener and defendant; (2) whether evidence was sufficient to show that defendant was a fiduciary of plaintiffs Owen and Lois Wagener and that his conduct in obtaining title to and refusing to reconvey the subject property to Owen and Lois Wagener constituted a breach of fiduciary duty; (3) whether the record establishes facts legally sufficient to justify the imposition of a constructive

trust, resulting trust, order of restitution in specie, or order of rescission and/or reformation in favor of plaintiffs Owen and Lois Wagener; (4) whether the record establishes facts sufficient to support the imposition of a constructive trust in favor of plaintiff Peggy Wagener as to a one-half interest in the subject property if lawfully obtained by defendant; and (5) whether the facts are sufficient to require defendant to pay plaintiff Peggy Wagener damages for breach of promise to marry.

Accordingly, the trial court should have denied defendant's motion for summary judgment and allowed the disputed facts, inferences and genuine issues of material fact to be resolved in a trial. We therefore reverse the trial court's grant of summary judgment to defendant and remand the cause for a trial.

Next, defendant contends that the trial court abused its discretion when it denied his motion for sanctions pursuant to Illinois Supreme Court Rule 137. (134 Ill. 2d R. 137.) Supreme Court Rule 137 provides, in pertinent part, as follows:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." 134 Ill. 2d R. 134.

The imposition of sanctions pursuant to Illinois Supreme Court Rule 137 is within the sound discretion of the trial court and will not be disturbed by a court of review absent an abuse of discretion. (*In re Marriage of Sykes* (1992), 231 Ill. App. 3d 940, 946, 596 N.E.2d 1226,

1231; *Kubiak v. City of Kewanee* (1992), 228 Ill. App. 3d 605, 607, 592 N.E.2d 1200, 1202.) When reviewing the propriety of the imposition of sanctions by a trial court pursuant to Rule 137, an appellate court should base its determination upon the following factors: (1) whether the trial court's ruling was an informed one; (2) whether the ruling was based upon valid reasons which fit the case; and (3) whether the trial court's ruling followed logically from the application of the reasons stated to the particular circumstances of the case. *Kubiak*, 228 Ill. App. 3d at 607, 592 N.E.2d at 1202.

■ In the present case, the trial court's denial of defendant's motion for sanctions pursuant to Rule 137 was not an abuse of discretion. Defendant has failed to demonstrate that the trial court's ruling was not an informed one, that the ruling was not based upon valid reasons that fit the case and that said ruling did not follow logically from the application of the reasons stated to the particular circumstances of the case.

Finally, plaintiffs allege that the trial court abused its discretion when it denied their motion for sanctions pursuant to Illinois Supreme Court Rule 137. (134 Ill. 2d R. 137.) We disagree.

The order of June 19, 1991, in pertinent part, reads as follows:

> "This cause coming to be heard on the plaintiffs' motion to strike defendant's Rule 137 motion, and the court having considered the motion to strike and supporting memoranda and recourse to portions of the record:
>
> IT IS HEREBY ORDERED:
> &ast;&ast;&ast;
>
> (2) Plaintiffs' pending motion for sanctions, although not having been reviewed by the court, is denied *sua sponte* for the reasons expressed from the bench concerning defendant's motion."

■ Although plaintiffs' motion for sanctions was denied prior to a hearing on the motion, the trial court's denial of said motion is not an abuse of discretion. The record shows that plaintiffs' motion for sanctions was denied for the reasons expressed by the trial court concerning its denial of defendant's motion for sanctions. The record therefore indicates that the trial court's ruling on plaintiffs' motion was an informed one which was based upon reasons that fit the case and followed logically from the application of the reasons stated to the circumstances of the case. Accordingly, we find that the trial court's ruling on plaintiffs' motion for sanctions was proper.

For the aforementioned reasons, we affirm in part and reverse in part the judgment of the circuit court, and we remand this cause for further proceedings consistent therewith.

Affirmed in part, reversed in part and remanded.

TULLY, P.J., and GREIMAN, J., concur.