**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210296-U

Order filed September 21, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| BAETA ANIELA WILLIAMS, | ) | Will County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-21-0296 |
| and | ) | Circuit No. 15-D-1298 |
| | ) | |
| PAUL WESLEY WILLIAMS, | ) | |
| | ) | Honorable Derek W. Ewanic, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice O'Brien and Justice Daugherity concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The record is sufficient to review the trial court's decision to impose sanctions. The court did not abuse its discretion in sanctioning respondent for filing a pleading that was not well grounded in fact.

¶ 2    Respondent, Paul Wesley Williams, appeals an order granting petitioner, Baeta Aniela Williams's, emergency motion for sanctions. Paul contends the Will County circuit court violated Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) by failing to detail the factual basis

for imposing sanctions in its written order. Alternatively, Paul argues that sanctions are unwarranted under the circumstances. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The parties were married on October 1, 2011. They have one minor child from their marriage. On July 27, 2015, Baeta filed a verified petition for dissolution of marriage. The parties agreed to the entry of an order for the allocation of parental responsibilities and a parenting plan. The parties agreed to a marital settlement agreement which the court incorporated into its judgment for dissolution of marriage. The order required Paul to pay Baeta $812 per month in child support.

¶ 5        On April 3, 2020, Paul filed a *pro se* motion to modify child support due to the impact of the COVID-19 pandemic on his income. Paul retained counsel and filed a motion to modify the parenting schedule, driving time, and other arrangements. Baeta filed a petition for rule to show cause alleging that Paul failed to pay child support. The court ordered the parties to attend mediation. Through mediation, the parties agreed to a new parenting schedule.

¶ 6        On January 20, 2021, the court held a hearing on the pending petition and motions. The court adopted the parties' mediation agreement regarding the modified parenting schedule. The court denied Baeta's petition for rule to show cause because Paul did not willfully fail to pay child support due to the pandemic. The court granted Paul leave to file an amended motion to modify child support.

¶ 7        On January 27, 2021, Paul filed an amended motion to modify child support. The motion alleged that the mediation agreement between the parties granted Paul 146 overnights with their son. Paul asserted that "[b]ased on the modified schedule, Paul now has a minimum of 146

overnights with" their son. He claimed this constituted a substantial change in circumstances. He asked the court to reduce his child support obligation.

¶ 8        The court set the motion for a hearing on April 7, 2021.

¶ 9        On the day of the hearing, Baeta filed an emergency motion for sanctions. The motion made the following allegations. Baeta claimed that Paul's motion to modify child support was not well grounded in fact. Specifically, Paul's assertion that he now had a minimum of 146 overnights with their son was not accurate. On February 17, 2021, Baeta's counsel sent Paul's counsel a letter stating that the modified parenting schedule did not result in Paul having more than 146 overnights with their son. Baeta's counsel asked Paul's counsel to withdraw the motion to modify child support or to provide a calendar to show that Paul now had over 146 overnights with their son. Baeta sent the same letter to Paul's counsel on February 24, 2021, and March 4, 2021. Paul's counsel never responded to the letters. Instead, on the eve of the hearing, Paul's counsel copied Baeta's counsel on an email to the court with an exhibit showing that Paul had 133 overnights with their son for 2021. Baeta argued that Paul's claim in his motion to modify child support that he now had 146 overnights with their son was not well grounded in fact.

¶ 10       At the hearing, Paul's counsel acknowledged that Paul only had approximately 133 overnights with his son in 2021. Counsel noted that the number of overnights varied from year to year. In 2022, Paul would have 156 overnights. In 2023, Paul would have 138. And, in 2024, Paul would have 162. Based on the average, Paul's counsel argued that Paul had over 146 overnights overall with his son.

¶ 11       The court asked Paul's counsel, "[your] pleadings, though—I'm looking at your pleading that you filed. *** Paragraph 7 says that he has minimum of 146 overnights with the minor child. *** [T]hat would be incorrect for 2021, 2023, and every odd year, correct? Counsel responded,

- 3 -

"Correct, but as an average." The court noted, "But it's not what your pleading says. It just says 'now'—'he now has a minimum of 146 overnights.' " The court asked Baeta's counsel to weigh in. Baeta's counsel stated:

"There is no 146 overnights for 2021. It is the year 2021. The schedule for '22, '23, '24 that I received at 4:00 o'clock last night. I briefly looked at [them]. But my ability to go through every day for the next four years, especially considering there's not even a school schedule yet for 2022 or '23, or '24, Judge, it's just improper. We're early. If she wants to file a motion next year, [Paul's counsel] could file a motion next year. But right now there are not 146 overnights.

And that's also the basis of my motion for sanctions."

¶ 12    In response, Paul's counsel argued that the parties would be in court every year seeking to modify child support given that the overnights varied from year to year. Counsel asked the court to consider the average overnights for the four-year period.

¶ 13    The following discussion occurred:

"THE COURT: Here's the issue I have, though.

You filed a motion that alleges your client has, currently, in excess of 146 days. We now know, by your own admission, that is not correct. And that the only way your client gets to above 146 days is, even by your own projections, it will be an every-other-year occurrence.

[PAULS'S COUNSEL]: Correct, every even year.

- 4 -

THE COURT: And every odd year he will not be above 146.

[PAUL'S COUNSEL]: Correct.

THE COURT: So and you're asking to do an average.

Here's my—the concern I have now. Based on your, your pleading—and as [Baeta's counsel] pointed out in his motion for sanctions—you've alleged that your client currently has 146 overnights. He does not.

Where is the substantial change in circumstances currently, as we sit here today, that would even allow for me to consider whether or not there should be an—a change in support?

[PAUL'S COUNSEL]: I do believe that the substantial change in circumstances does relate back to the parenting agreement and that it is no longer stagnant.

And that's what the prior agreement was. It was stagnant."

Paul's counsel asked the court to consider the average overnights and reduce Paul's child support obligation. The court informed Paul's counsel that it did not believe that the motion was accurate. Specifically, the allegation that Paul had a minimum of 146 overnights was not correct. The court refused to accept Paul's counsel's projected future calendars given that they were speculative. The court continued,

"I think your pleading is not right at this point in time to amend support. Looking at the, the factors and the facts that you do have with the 133 overnights, that I don't believe that based on the

- 5 -

current number of overnights that your client has, that a modification of support would be appropriate."

¶ 14 Ultimately, the court denied the amended motion to modify child support without prejudice. The court believed there may be a time when the motion was ripe and suitable, but the court did not currently feel comfortable speculating as to the number of overnights Paul would have in the future.

¶ 15 The court then addressed Baeta's motion for sanctions. It asked Paul's counsel if it was true that Baeta's counsel sent several requests to furnish a calendar to show that Paul had more than 146 overnights in 2021. Paul's counsel answered, "I agree that there were two, two contacts. And I agree that I—well, I did leave a message that I don't—we—we're at odds. He said there were not 146. I said there were. So I, I do acknowledge two, two—two contacts." The court responded, "I think [Baeta's counsel] made a good-faith effort to prepare for this hearing, that he reached out in an effort to obtain an understanding of where your pleading was founded. That the failure to comply with his request prior to yesterday's date warrants that sanctions be assessed."

¶ 16 The written order corresponding to the hearing provided, in relevant part, that "[Baeta]'s emergency motion for sanctions is granted and [Paul] is sanctioned, in favor of [Baeta], in [an] amount equal to the necessary and reasonable attorneys' fees and costs incurred regarding the amended motion to modify child support." The court set the matter for a hearing on Baeta's attorney fees.

¶ 17 On April 29, 2021, Paul filed an emergency motion to reconsider the denial of the amended motion to modify child support and vacate the court's order imposing sanctions against him and his counsel. Paul later amended the motion. In relevant part, Paul alleged that sanctions were improper. Paul claimed that the amended motion to modify child support properly alleged a

substantial change in circumstances in that "Baeta moved to Indiana and the parties entered an agreed modification of the parenting time." The motion to reconsider did not acknowledge the factual inaccuracy of Paul's amended motion to modify child support.

¶ 18 At the hearing, Paul's counsel addressed the sanctions. Counsel explained:

> "Now admittedly we could have included some different
> words in our amended motion that was filed back on January 27,
> 2021. We could have included the word projected or estimated or
> perhaps clarified even further, but we don't think a one word
> omission rises to the level of sanctions or a typographical error
> rises to the level of sanctions."

Counsel further argued that they made a good-faith argument that the definition of "per year" was not defined and that the court should also consider the average overnights when deciding his motion to modify child support.

¶ 19 The court then explained its reasoning for imposing sanctions. First, it noted that Paul's motion to modify child support did not argue that he averaged more than 146 overnights. It also never argued that the term "per year" was not clearly defined in the statute. Instead, the court noted that Paul's motion alleged that he currently had 146 overnights, which was not true. The court explained,

> "There was no dispute at the time [Baeta's counsel] filed
> his emergency motion for sanctions and we went to hearing on that
> that [Paul's counsel] was aware that at the time of the filing of that
> pleading he did not in fact have a minimum of 146 overnights. ***

- 7 -

*** [Baeta's counsel] brought that to the attention of [Paul's counsel] on two separate occasions prior to trial, *** it wasn't until the eve of hearing that he was provided with calendars for the four years that admitted that there was not a substantial change in circumstance currently despite what the pleadings stated. ***

*** Again [Paul's counsel] admitted that as of the filing of the petition, the amended motion to modify child support, there was no substantial change in circumstance. That is why and based on the representations [Baeta's counsel] made and that were not disputed that he brought that to your firm's attention prior to the hearing date.

In fact shortly after the amended pleading was filed and that no response was given in regards to the petition, you could have let him know there was a scrivener's error before the hearing and you could have made these arguments at the time of the motion ***. They weren't made. So I think it was appropriate and that is why I granted [Baeta's counsel's] motion for sanctions because at the time we went to hearing, there was no dispute that there was no substantial change in circumstance."

¶ 20    The court found that sanctions were appropriate. The court added that despite being informed of the factual inaccuracy by opposing counsel, Paul's counsel "insisted on going forward on the motion knowing at the time that you were going forward on the motion that there

was no substantial change in circumstances." The court denied Paul's motion to reconsider imposing sanctions.

¶ 21    On June 14, 2021, following a hearing on Baeta's attorney fees the court imposed $2031.25 in sanctions against Paul and his counsel.

¶ 22    Paul appeals.

¶ 23                                II. ANALYSIS

¶ 24    Initially, we note that Baeta did not file an appellate brief. However, we will proceed with the appeal as "the record is simple and the issues can be easily decided without the aid of the appellee's brief." *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009).

¶ 25    On appeal, Paul asks this court to reverse the trial court's order granting Baeta's emergency motion for sanctions. A determination of whether to grant a party's motion for sanctions is a matter committed to the sound discretion of the trial court. *Century Road Builders, Inc. v. City of Palos Heights*, 283 Ill. App. 3d 527, 531 (1996). The trial court's decision will not be disturbed on appeal absent an abuse of discretion. *Wagener v. Papie*, 242 Ill. App. 3d 354, 363 (1993).

¶ 26    First, Paul contends the sanctions order should be reversed because the trial court failed to comply with Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). Specifically, the order imposing sanctions did not set forth in writing the factual basis for its sanctions award. Rule 137 provides that, "[w]here a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." *Id.* We agree that the trial court failed to comply with the plain language of the Rule by failing to make a written finding. However, this error does not warrant a remand for the trial court to enter a written factual finding. A reviewing court can "sustain the

- 9 -

decision of a lower court on any grounds which are called for by the record, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995). In light of this, our focus is on whether the *record* provides an adequate basis for the trial court's decision. *Lake Envoronmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16.

¶ 27 Here, the record sets forth the legal and factual basis for the court's decision to impose sanctions. At the hearing regarding sanctions, the court focused its questioning on the accuracy of Paul's allegation that he had more than 146 overnights with the child in 2021. The court expressed its concern with Paul's counsel's failure to respond to Baeta's letters which pointed out the inaccuracy. The court explained that it believed Baeta's counsel "made a good-faith effort to prepare for this hearing, that he reached out in an effort to obtain an understanding of where your pleading was founded. That the failure to comply with his request prior to yesterday's date warrants that sanctions be assessed." Then, at the hearing on Paul's motion to reconsider the court made clear that sanctions were based on counsel's inaccurate pleading and counsel's failure to respond to opposing counsel's letters pointing out the inaccuracy. On this record, we are able to make an informed and reasoned decision as to whether the trial court abused its discretion. We decline to reverse the sanctions order simply because the court did not reduce the factual basis in writing.

¶ 28 Next, Paul contends that sanctions are unwarranted under the circumstances. He contends he made a good-faith argument that there existed a substantial change in circumstances such that child support should be modified. Upon review, we find that Paul's factually inaccurate pleading and failure to address the inaccuracy prior to the hearing on the motion is sufficient to warrant sanctions.

¶ 29        Under Rule 137, sanctions may be imposed upon a party or his attorney or both for the filing of a pleading, motion or other document that is not well grounded in fact, is not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or where it was interposed for an improper purpose, such as to harass, caused unnecessary delay or needless increase in litigation. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). The purpose of the rule is to deter the filing of frivolous and false lawsuits and is not intended to penalize litigants and their attorneys merely because they were zealous but unsuccessful. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 7 (2000). Rule 137 is penal in nature and must be strictly construed. *Id.* We apply an objective standard in determining what was reasonable under the circumstances as they existed at the time of the filing. *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004). In deciding whether the imposition of sanctions is appropriate, the court must determine what was reasonable for the attorney or the signing party to believe at the time of filing, rather than engaging in hindsight. *Lewy v. Koeckritz International, Inc.*, 211 Ill. App. 3d 330, 334 (1991). As stated above, we review for an abuse of discretion.

¶ 30        Here, we find no basis for concluding that the trial court abused its discretion in imposing sanctions against Paul and his attorneys. Paul's amended motion to modify child support contained a factually inaccurate allegation regarding the number of overnights Paul had with the child in 2021. There is no dispute that this allegation was false. Paul's counsel admitted that this was factually incorrect. Paul's counsel knew this was incorrect at the time they filed the motion given that the calendar they provided to the court and opposing counsel showed that Paul had less than 146 overnights in 2021. What is more troubling is that Baeta's counsel also made Paul's counsel aware of this inaccuracy by sending them multiple letters. Paul's counsel did

- 11 -

nothing to cure the error in the pleading. Accordingly, we find the trial court did not err when it imposed sanctions.

¶ 31     Despite this, Paul argues that sanctions are unwarranted because the court denied his amended motion to modify child support without prejudice. According to Paul, dismissal without prejudice shows that he could advance a good-faith argument based on the number of overnights in the future. Specifically, Paul contends that there is a good-faith argument that his average overnights will exceed 146 days over a four-year period. Alternatively, Paul argues that he will have more than 146 overnights with the child every even year.

¶ 32     The problem with Paul's arguments is that he did not include them in his amended motion to modify child support. The court sanctioned Paul for alleging he had more than 146 overnights in 2021. His counsel admitted that this statement was not true and did nothing to respond to opposing counsel's letters notifying counsel of the error. Whether Paul will have more than 146 overnights in 2022 or average more than 146 overnights over several years is not relevant to the false allegation made in Paul's motion to modify child support. We cannot find that the trial court abused its discretion based on this record.

¶ 33                           III. CONCLUSION

¶ 34     For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 35     Affirmed.