**In re Diana Carol STOLTZ, Debtor.**

No. 00–5–0451–JS.

United States Bankruptcy Court,
D. Maryland.

July 17, 2002.

Orbie R. Shively, Liebmann & Shively, P.A., Baltimore, MD, for trustee.

George E. Rippel, Jr., Baltimore, MD, for debtor.

Kristin Case Lawrence, Bishop, Daneman & Reiff, LLC, Baltimore, MD, for David Seibert.

### MEMORANDUM OPINION SUSTAINING OBJECTION TO TRUSTEE'S MOTION TO SELL RING

JAMES F. SCHNEIDER, Chief Judge.

In this case, a diamond engagement ring was in the debtor's possession on the date she filed bankruptcy. She agreed to allow the Chapter 7 trustee to sell the ring, having claimed a portion of its value exempt. The trustee filed a notice of his intention to sell the ring, but the debtor's former boyfriend objected on the ground that the ring belonged to him. He claimed that he had given the ring to the debtor as an engagement ring in contemplation of

marriage. By reason of the parties' having failed to marry, he claimed that the ring was rightfully his and not subject to the trustee's power to sell. For the following reasons, the objection will be sustained.

### FINDINGS OF FACT

On January 13, 2000, the debtor, Diana Carol Stoltz, filed the instant Chapter 7 bankruptcy case. Sarah E. Longson, Esquire, was appointed Chapter 7 trustee and conducted a meeting of creditors on February 7, 2000. The meeting was attended by the debtor, her counsel, George E. Rippel, Jr., and David Seibert, the debtor's former boyfriend. The trustee demanded that the debtor turn over the ring to her. The next day debtor's counsel delivered the ring to the trustee, together with a letter dated February 8, 2000, that memorialized an agreement with Mr. Seibert to return items of personal property belonging to the debtor upon delivery of the ring to the trustee. The debtor received a discharge by order [P. 5] dated April 12, 2000. On July 18, 2000, George W. Liebmann, Esquire, was appointed successor Chapter 7 trustee by order of even date [P. 7]. The trustee filed the instant notice of sale [P. 8] on September 19, 2000, in which he described the ring to be sold as "a 14 karat yellow and white gold lady's engagement ring containing one marquise shaped diamond approximately 2 karats, color I–J–K, clarity 11, and two small matched tapered baguette diamonds." The proposed buyer was Nelson Coleman, Inc., a commercial jeweler, for the stated price of $3,000. The notice provided a 20–day period within which to file objections to the sale. On October 5, 2000, Mr. Seibert filed the instant objection [P. 8].

A hearing was held on the objection. Testimony presented at the hearing was in conflict on the issues of whether the parties had ever been engaged and whether the ring was an engagement ring given to the debtor as a conditional gift made in contemplation of marriage.

Ms. Stoltz vehemently denied that she ever consented to marry Mr. Seibert or that she even contemplated such a union. Nevertheless, the parties agreed that they had lived together for at least a year (their testimony differed on the exact dates and the exact duration of the relationship) and that while they were living together, Mr. Seibert presented the ring to Ms. Stoltz. While she testified that Mr. Seibert was only her "boyfriend," Ms. Stoltz agreed that she and her young son from a previous relationship lived under the same roof with Mr. Stoltz. Se also acknowledged that she originally described Mr. Stoltz in her bankruptcy schedules as her "fiancé," but attributed that to a mistake. She later amended her schedules to characterize Mr. Stoltz as her "boyfriend."

The witnesses who corroborated the parties' testimony were not disinterested. Ms. Stoltz's mother confirmed her testimony that Ms. Stoltz and Mr. Seibert were never engaged, while Mr. Stoltz's secretary, who is still employed by him, testified that they were.

What is beyond dispute is Mr. Seibert's testimony that he invited a jeweler to the residence he shared with Ms. Stoltz and her child for the purpose of selecting the ring with Ms. Stoltz, which cost Mr. Seibert more than $7,000. Ms. Stoltz confirmed this. The parties' testimony differed as to which hand and which finger Ms. Stoltz wore the ring. He testified that she wore the ring on the fourth finger of her left hand. Ms. Stoltz swore that she wore the ring on different fingers of both hands. Mr. Seibert testified that the parties argued and that Ms. Stoltz returned the ring to him several times during their relationship. Ms. Stoltz denied this, but said that on one occasion, Mr. Seibert for-

cibly removed the ring from her hand. Mr. Seibert denied this. The ring remained in the debtor's possession after the couple separated and she had it on the date she filed the instant Chapter 7 petition. The parties are in agreement that their relationship, however it may be characterized, is over. When the parties separated, Mr. Seibert demanded the return of the ring and she demanded the return of items of the debtor's personal property and that of her minor son which were left behind at their former residence.

## CONCLUSIONS OF LAW

■ Federal bankruptcy law sets the inclusive bounds of property of the bankruptcy estate, casting an all-encompassing net over assets of every kind and description in which a debtor enjoys any interest. 11 U.S.C. § 541(a). Non-bankruptcy state law governs the nature of the debtor's interest in property. *American Bankers Ins. Co. v. Maness*, 101 F.3d 358, 362 (4th Cir.1996); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ If the ring was given as a gift in contemplation of marriage, then it was a conditional gift, presented on the condition of the agreement of the parties to marry, which did not occur. *In re Wilson*, 210 B.R. 544 (Bankr.N.D.Ohio 1997); *Heiman v. Parrish*, 262 Kan. 926, 942 P.2d 631 (1997).

While Maryland abolished actions for breach of promise by statute in 1945, *Miller v. Ratner*, 114 Md.App. 18, 688 A.2d 976 (1997), *cert. denied*, 345 Md. 458, 693 A.2d 355 (1997), the right of a disappointed fiancé to recover possession of an engagement ring given in contemplation of marriage survives because Maryland recognizes the right of a donor to recover a conditional gift. *Grossman v. Greenstein*, 161 Md. 71, 155 A. 190 (1931); *cf. Leemon v. Wicke*, 216 A.D.2d 272, 627 N.Y.S.2d 761 (2d Dep't 1995); *Vigil v. Haber*, 119 N.M. 9, 888 P.2d 455, 44 ALR5th 779 (1994); *Mack v. White*, 97 Cal.App.2d 497, 218 P.2d 76 (2d Dist.1950); *Gill v. Shively*, 320 So.2d 415 (Fla.Dist.Ct.App. 4th Dist.1975), *distinguished, Greenberg v. Greenberg*, 698 So.2d 938 (Fla.Dist.Ct.App. 4th Dist.1997).

In *Grossman*, the Maryland Court of Appeals decided that a gift of $1,000 in a bank account before marriage to the donor's daughter and prospective son-in-law was a gift conditioned upon the marriage, which did not occur, and ordered its return. In so doing, the court stated:

> ... A donor may limit a gift to a particular purpose, and render it so conditioned and dependent upon an expected state of facts that, failing that state of facts, the gift should fail with it. A familiar illustration is a gift *mortis causa*. On the other hand, the donor may, in any situation, make an absolute gift, not dependent upon the fulfillment of expectations. Even to a party to a contract of marriage, in whom the donor is interested only because of the expectation of marriage, the donor may, if he wishes, make an absolute gift which would be unaffected by a failure to marry. Whether in a given instance his gift is of one kind or the other, conditional and dependent or absolute, is an ordinary question of intention, to be determined by any express declaration in the making of the gift, or from the circumstances.

*Grossman v. Greenstein*, 161 Md. at 73, 155 A. 190. *See also* the case of *Cohen v. Sellar*, [1926] 1 K.B. 539, in which Justice McCardie of the King's Bench stated: "It is curious that, after the centuries in which so many engagements to marry have been made in hope, but dissolved in disillusion, the questions now before me have not been long ago determined by direct decision."

■ Mr. Seibert testified unequivocally that it was his expressed donative intent that the ring he gave to Ms. Stoltz was an engagement ring, conditioned upon their getting married.[1]

The Court has also taken judicial notice of several recognized authorities on the social customs attendant to the giving and receiving of engagement rings.[2] In this country, it is the usual practice for a prospective groom to consult his intended bride regarding her taste in engagement rings by visiting a jeweler in her company for the purpose of selecting the ring of her choice. Engagement rings are customarily worn by a woman on the fourth finger (the ring finger) of her left hand. The ring traditionally features a diamond, although it may consist of any precious gem, including the bride's birthstone.[3]

This Court has reviewed very carefully the testimony of both Mr. Seibert and Mr. Stoltz. In a bankruptcy context, at one time at least, he was an insider of the debtor, although he probably is not now.[4] Nevertheless, because the parties were in a confidential relationship in which they may not have behaved logically or at arm's length, the testimony of both is subject to the greatest scrutiny by the Court.

The testimony of Ms. Stoltz was not convincing on the point of her having sent applications to various bridal publications while she and Mr. Seibert were living together. When questioned about this, she testified that because her mother was in the catering business, she sent away for helpful information. She explained away the fact that she put her name and that of Mr. Seibert on the applications as "bride and groom" because the applications required such information to be provided and she reasoned that the publications would not be sent to her if she failed to do so. She also said that a close relative was about to be married and it was for that reason that Ms. Stoltz sent away for some wedding ideas.

In light of all this suspicious testimony (on both sides), it seems to this Court that probably the most important evidence of intent is the undisputed conduct of the parties that the Court has considered as circumstantial evidence based upon the attendant circumstances, including the following uncontested facts:

(1) Mr. Seibert presented the ring to Ms. Stoltz at a time when the parties were living together in a relationship that can be characterized not only as romantic and

---

**1.** This testimony was self-serving because, if believed, Mr. Seibert would recover title, if not immediate possession, of the ring. On the other hand, Ms. Stoltz has little to gain from the sale of the ring, other than the satisfaction that some, if not all, of her debts will be paid by the trustee, and possibly some small portion of the sale proceeds. Whether those debts are paid or not, she has already received a discharge. The Court recognizes the distinct possibility that both parties may be motivated by ill will toward each other as to falsify their testimony, even under oath. So the testimony of each, at the outset, is highly suspect.

**2.** Amy Vanderbilt, Amy Vanderbilt's Complete Book of Etiquette, *If The Marriage Does Not Take Place,* 120 (1957); Judith Martin, Miss

Manner's Guide to Excruciatingly Correct Behavior, *Presents from Beaux,* 526 (1982).; Elizabeth L. Post, Emily Post's Etiquette, *The Engagement/Wedding Rings,* 608 (15th ed.1992).

**3.** Post, *Id.* at 602.

**4.** " 'Insider,' defined Section 101(31) of the Code is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. If the debtor is an individual, then a relative of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, and a corporation controlled by the debtor are all insiders..."

Comments to 11 U.S.C. § 101(31).

domestic, but also as familial, because the couple was living as a family with the debtor's son.

(2) The relationship was significant in its duration, by all accounts lasting at least a year.

(3) Mr. Stoltz not only obtained the services of a jeweler, but invited him to visit the parties at their joint residence to permit Ms. Stoltz to exercise the prerogatives of a prospective bride to select her own engagement ring.

(3) The parties acknowledged that the diamond ring Ms. Stoltz selected was exquisite and very valuable, something more than a mere bauble, indeed something that would be given on a rather special occasion.

(4) Regardless of which finger of either hand Ms. Stoltz chose to wear the ring, the undisputed fact is that she wore the ring in public and this was further evidence of the serious nature of the relationship.

(5) In his motion to sell the ring, the trustee has described it as "an engagement ring." Indeed, according to the description of the ring and the manner in which it was selected and purchased, the ring fits the description of an engagement ring.

The Court finds that the ring in question was a conditional gift that the debtor was obligated to return upon the dissolution of the relationship, *Vann v. Vehrs*, 260 Ill. App.3d 648, 198 Ill.Dec. 640, 633 N.E.2d 102 (2d Dist.1994); *Daigle v. Fournet*, 141 So.2d 406 (La.Ct.App. 4th Cir.1962); *Beberman v. Segal*, 6 N.J.Super. 472, 69 A.2d 587 (Law Div.1949); *Lewis v. Permut*, 66 Misc.2d 127, 320 N.Y.S.2d 408 (City Civ.Ct. 1971), prior to the filing of bankruptcy.

Can it be argued that in depriving the debtor of other articles of her personal property both before and after she filed bankruptcy that Mr. Seibert has come into this court with unclean hands? The bank-ruptcy court is a court of equity, the jurisdiction of which may only be invoked in favor of one who has acted in good faith. However, on this point, the Court finds the parties equally culpable, each for refusing to return the personal property of the other. The practical effect of this is that the debtor should have returned the ring to Mr. Seibert before she filed her bankruptcy petition.

Admittedly, this is a very close case, but in such a close case, the Court believes that it should err, if at all, on the side of caution and not permit the trustee to become the unwitting cause of an injustice. The Court also recognizes that the instant objection to notice of sale is a contested matter and not a complaint for turnover. Nevertheless, consistent with this opinion, the trustee will be ordered to turnover the ring to Mr. Seibert.

For these reasons, the objection of David Seibert to the Chapter 7 trustee's notice of private sale will be SUSTAINED.

ORDER ACCORDINGLY.