843 A.2d 758

**Lisa VER BRYCKE**

v.

**J. Russell VER BRYCKE, III, et al.**

**No. 54, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 13, 2004.

Reconsideration Denied April 2, 2004.

J. Thomas Guinta, Annapolis (William F. Jones, Annapolis, Leonard G. Ross, Jr., Gaithersburg, on brief), for petitioner/cross-respondent.

Timothy E. Meredith (Warfield, Meredith & Darrah, P.C., Saverna Park, on brief), for respondents/cross-petitioners.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

BATTAGLIA, J.

John Russell Ver Brycke III, and his wife, Barbara P. Ver Brycke ("the Ver Bryckes" or "the parents") brought this case against their son, John Russell Ver Brycke IV ("John"), and his former wife, Lisa M. Ver Brycke, now Lisa Feehely ("Lisa"). In 1992, the Ver Bryckes provided $200,000 to John and Lisa in order to help them buy Rabbit Hill, a house located next door to the Ver Bryckes in Anne Arundel County. The Ver Bryckes wanted John and Lisa next door because they wanted to be close to their grandchildren, and they expected John and Lisa to care for them in their old age. John and Lisa never moved into Rabbit Hill, however, and they subsequently divorced. The Ver Bryckes brought this

case in order to recover the $200,000 they turned over to John and Lisa.

The facts of this case are complicated, and many of the issues are intertwined. The parties presented the following questions for our review:

Lisa asks:

1. If an alleged agreement, condition or promise to perform life time support, is not written, or referenced in a deed of trust that secures an interest in land, does that agreement, condition or promise to perform, satisfy the Statute of Frauds under Maryland Code, Real Property § 5–104 and Maryland Code, Real Property § 4–106?

2. If an agreement condition or promise to perform life time support, is not identified nor affirmed as part of the consideration or as an obligation specified in a deed of trust securing an interest in land, can it be valid and be afforded a twelve (12) year Statute of Limitations as a document under seal pursuant to Maryland Code, Courts and Judicial Proceedings § 5–104 and satisfy the affidavit requirement of Maryland Code, Real Property § 4–106, that in order for a deed of trust to be valid unless the parties must affirm that the consideration as set forth therein is true?

The Ver Bryckes ask:

a. Did the Court of Special Appeals err in reversing the trial court's judgment regarding the statute of limitations. More specifically:

i. Did the Court of Special Appeals err in reversing the trial court's determination that the statute of limitations does not bar Plaintiffs' claims based upon unjust enrichment and detrimental reliance where the Court of Special Appeals based its reversal upon the jury's answer to one special issue which the Court of Special Appeals acknowledged to be "ambiguous," and where the Court of Special Appeals resolved the ambiguity contrary to the judgment of the trial judge?

ii. Did the Court of Special Appeals err in its holding as to when the statute of limitations for causes of action

based upon unjust enrichment and detrimental reliance would begin to run?

iii. Did the Court of Special Appeals err in holding as a matter of law that the Plaintiffs' alleged knowledge of an anticipatory breach of a condition established the date that the Plaintiffs' causes of action for unjust enrichment and detrimental reliance accrued?

b. Did the trial court and the Court of Special Appeals err in failing to apply Maryland precedent from this Court providing for prejudgment interest as a matter of right in cases where the money claimed by a plaintiff is a definite sum that has actually been used by the other party?

In short, we must consider whether the Court of Special Appeals erred when it applied the twelve-year statute of limitations period [1] rather than the three-year statute of limitations period [2] to the Ver Bryckes' claim against John and Lisa. To resolve this question, we must explore whether the gift to John and Lisa was conditional or absolute. Because we determine that the Ver Bryckes gave a conditional gift to John and Lisa, we must then examine when a limitations period begins to toll should a conditional gift fail.

Furthermore, because we disagree with several aspects of the Court of Special Appeals' opinion regarding whether the

---

**1.** Section 5–102(a) of the Courts & Judicial Proceedings Article (1973, 2002 Repl.Vol.) provides:

(a) Twelve-year limitation.—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:
(1) Promissory note or other instrument under seal;
(2) Bond except a public officer's bond;
(3) Judgment;
(4) Recognizance;
(5) Contract under seal; or
(6) Any other specialty.

**2.** Section 5–101 of the Courts & Judicial Proceedings Article (1973, 2002 Repl.Vol.) provides:

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

parents' cause of action sounded in law and or equity, we delve into a discussion of remedies at law and in equity. Finally, we shall consider whether the intermediate appellate court erred when it affirmed the trial court's denial of the Ver Bryckes' claim for pre-judgment interest.

We agree with the Court of Special Appeals that the Ver Bryckes' gave John and Lisa a conditional gift of $200,000, but we believe that the Court of Special Appeals erred when it held that the three-year statute of limitations period barred a portion of the Ver Bryckes' claim, amounting to $40,000, but that the twelve-year statute of limitations period did not bar $160,000 of their claim, which was secured by a deed of trust. Because we reach these conclusions, we need not consider Lisa's claims as to whether an unwritten agreement involving a conditional promise satisfies the Statute of Frauds or whether a conditional promise to provide life support is valid and thus is afforded the twelve-year statute of limitations period for documents under seal.

We also conclude that, when characterizing whether a claim sounds in law or equity, courts should look to the remedies sought. We affirm, however, the intermediate appellate court's denial of the Ver Bryckes' claim for pre-judgment interest.

## I. Background

### A. Facts

In 1992, the Ver Bryckes provided $200,000 to their son, John, and his wife, Lisa, in order to help John and Lisa buy Rabbit Hill, a property located next door to the Ver Bryckes in Anne Arundel County on the Severn River. The Ver Bryckes wanted to create a "family compound," so as to be close to their grandchildren and so that John and Lisa would be able to care for them in their old age.

The three-acre property included a house and a guest cottage, and its listing price was $750,000. In order to purchase the property, the Ver Bryckes, John, Lisa, and John's sister, Pamela Ver Brycke, decided to pool their re-

sources and developed a purchase plan whereby the Ver Bryckes would borrow $200,000 from Norwest Mortgage, Inc., by securing a thirty-year mortgage against their home. They then would give this money to John and Lisa. Pamela would contribute $200,000 in return for the right to purchase the guest cottage located on one acre of the parcel. Finally, John and Lisa would borrow $300,000, by securing a mortgage against the main house on two acres of the property; they also would contribute $50,000 of their own money from savings. The result would be that John and Lisa would own two acres of the property and the "main house" and that Pamela would own the guest cottage and one acre of the property.

On August 10, 1992, the *pater*, John Ver Brycke, signed a "gift letter" to Norwest Mortgage, stating that he would give a "gift of $200,000" to his son and that it was "a bona fide gift, and there is no obligation, expressed or implied either in the form of cash or future services to repay this sum at any time." [3] One month later, on September 10, 1992, the *pater*, John Ver Brycke, consulted his estate attorney, Ronald Holden, about tax consequences that would result from the gift of $200,000 to John and Lisa. On September 11, 1992, Holden replied:

> You have asked me to summarize the substance of my recommendations concerning your desire to make a gift of $200,000.00 unto your son and his wife by use of the annual $10,000.00 gifting rule. As you are aware, each of you as individuals is permitted to give up to $10,000.00 per calendar year unto any number of individuals. Thus, each of you may give $10,000.00 per year unto John and $10,000.00 per year unto his wife, Lisa. This represents a total of $40,000.00 per year.
>
> You expressed the desire that in making the proposed gift/loan gift of $200,000.00 you did not want to use up any of

---

3. On December 7, 1992, after the settlement, the *pater*, John Ver Brycke, wrote another letter to Norwest Mortgage, advising them that he and his wife "have given a gift of $200,000.00 to [their] son, John R. Ver Brycke, IV and daughter-in-law, Lisa May Ver Brycke."

*your* $600,000.00 unified credit (which is available under Federal Gift Tax Laws). During our meeting, I cautioned that if you were to set up a situation whereby John signed a $200,000.00 note and religiously, each calendar year, you forgave $40,000.00 of such note, there is a risk that the IRS will take the position that the entire gift of $200,000.00 was made in 1992 versus being made in increments of $40,000.00. I advised that this risk is even greater if your son and his wife did not make the customary interest and principal payment expected in [a]rmslength mortgage transactions. You stated that notwithstanding the above potential risk, you would like to proceed to attempt to qualify the gifts as being made in $40,000.00 increments.

Based upon the above objective I have recommended to you the following:

1. On settlement day, I recommend that each of you write over your separate signatures a $10,000.00 check to John and each of you write over separate signatures a $10,000.00 check to Lisa. If you follow this procedure, you will not have to file any kind of Gift Tax Return.

2. On settlement day, instruct [settlement agents] Feldman and Bernstein to prepare for you a $160,000.00 mortgage note to be signed by John and Lisa. The amount due should be amortized over 30 years at an interest rate of 6%.

3. In January of 1993 and each subsequent year thereafter, you will plan to forgive $40,000.00 of the debt.

4. John and Lisa should make regular mortgage payments to you each month, beginning November 1st. . . .

On September 30, 1992, John and Lisa bought Rabbit Hill. At the settlement, the *pater*, John Ver Brycke, wrote a check for $160,000 to be held in an escrow account at the title company handling the transaction. In addition, he and his wife each wrote four separate checks for $10,000 to John and Lisa who immediately endorsed the checks, totaling $40,000, to the title company. Then the Ver Bryckes had sixteen promissory notes drawn up for $10,000 each and executed a purchase money deed of trust granting them a lien, secondary to

Norwest Mortgage's first deed of trust, on Rabbit Hill.[4] After Pamela Ver Brycke, John's sister, contributed $200,000 towards the total $750,000 purchase price, John and Lisa conveyed the one acre parcel containing the guest house to her. As a result, with the Ver Bryckes' $200,000 gift and after borrowing $300,000 from Norwest Mortgage and contributing $50,000 of their own funds, John and Lisa acquired Rabbit Hill, consisting of the main house and two acres after Pamela's one-acre parcel conveyance, for $550,000.

John and Lisa never moved into Rabbit Hill, although, after the settlement, John and Lisa did begin renovating Rabbit Hill. John believed it was not habitable, so they lived with the Ver Bryckes, until the summer of 1993, when John and Lisa moved to the parents' summer cottage in Sherwood Forest, which is also located in Anne Arundel County.

While John and Lisa worked on Rabbit Hill, the Ver Bryckes followed Holden's advice and cancelled the $10,000 notes in 1993 and 1994, totaling $80,000. The Ver Bryckes wrote "cancelled" on the bottom of the notes and signed their names. They kept all of the notes, both cancelled and otherwise, in their safety deposit box.

In 1994, John and Lisa borrowed an additional $100,000 from Norwest Mortgage to pay for renovations at Rabbit Hill. Instead of using the money for Rabbit Hill, however, John and Lisa used it to renovate the Ver Bryckes' cottage in Sherwood Forest.

In 1995, Rabbit Hill remained uninhabitable. Lisa maintained, however, that she continued to want to live there. Meanwhile, the Sherwood Forest renovations were completed. The parents did not cancel the notes for 1995 and 1996.

In 1997, John and Lisa separated. Divorce proceedings began in January 1998. In July 1998, the Ver Bryckes recorded the deed of trust executed on September 30, 1992, as security for the $200,000.

---

**4.** Holden had recommended they have one promissory note for $160,000 drawn up.

In November 1999, John and Lisa contracted to sell Rabbit Hill for $980,000, and the settlement was scheduled for March 1, 2000. John and Lisa divorced on October 2, 2000.

## B. Procedural History

On March 23, 1999, naming John and Lisa as defendants, the Ver Bryckes filed a Complaint for Declaratory Decree in the Circuit Court for Anne Arundel County asking the court to declare their respective rights and obligations arising out of the $200,000. Lisa filed a counter and cross claim in July, arguing, among other things, that the $200,000 was a gift. The Ver Bryckes answered Lisa's counter and cross claims on July 13, 1999, denying Lisa's claims.

After John and Lisa contracted to sell Rabbit Hill but prior to the settlement date scheduled for March 1, 2000, the Ver Bryckes sent a copy of the deed of trust and a payoff statement to the settlement attorney for Rabbit Hill, calculating a balance due to them of $231,197.81 as of February 23, 2000 and advising that they would not release their deed of trust note unless they were paid the balance to them at closing. In response, Lisa moved for emergency *ex parte* relief, in the original action, and requested that the proceeds of the sale be placed in escrow to allow the closing to proceed.

On March 1, 2000, the date John and Lisa completed the sale of Rabbit Hill, the Circuit Court for Anne Arundel County placed the entire net proceeds of the sale in escrow and ordered that the case be scheduled for trial. John and Lisa paid off their first mortgage lien. The remaining profit, $547,224.54, was placed into an escrow fund pursuant to court order.

Amending their complaint to address the fact that Rabbit Hill had been sold, on December 7, 2000, the Ver Bryckes filed their first amended complaint, alleging, among other things, that they "never intended to make a completed gift of $200,000" and that "they would not have advanced the funds" to John and Lisa if they had not agreed to purchase and occupy Rabbit Hill. The Ver Bryckes supported their claim

for declaratory and equitable relief with the following theories: breach of deed of trust and notes, unjust enrichment, and promissory estoppel. John did not contest his parents' claims. Lisa answered, again maintaining, among other things, that the $200,000 was an absolute gift. On May 8, 2001, the Ver Bryckes again amended their complaint and requested a judgment of $450,000 against John and Lisa, including the additional argument that, under their unjust enrichment theory, the Ver Bryckes should receive a pro rata share of the profit John and Lisa earned received from the sale of Rabbit Hill.

In November 2001, after a five day trial, based on the jury's findings that the Ver Bryckes gave a conditional gift of $200,000 to John and Lisa, the trial court entered judgments in favor of the Ver Bryckes on their unjust enrichment and promissory estoppel claims.[5]

---

**5.** The jury's responses to the questions posed on the verdict sheet are as follows:

1a. Do you find by clear and convincing evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a completed, unconditional gift of $200,000.00 on September 30, 1992?
Yes _____ No *X*
If your answer is "yes," go to Question No. 2a. If your answer is "no," go to Question No. 1b.
1b. Do you find by clear and convincing evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a completed, unconditional gift of $200,000.00 on December 7, 1992?
Yes _____ No *X*
If your answer is "yes," go to Question No. 2a. If your answer is "no," got to Question No. 1c.
1c. Do you find by clear and convincing evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a completed, unconditional gift of $40,000.00 on September 30, 1992?
Yes _____ No *X*
After answering this question, proceed to the next question.
2a. Do you find by a preponderance of the evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a loan to Defendants on September 30, 1992?
Yes _____ No *X*
If your answer is "yes," answer questions 2b and 2c. If your answer is "no," go to Question 3a.
[Question Nos. 2b through 2e omitted.]
3a. Did you find by a preponderance of the evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a conditional gift on September 30, 1992?

Yes *X* No _____
If your answer is "yes," proceed to next question.
If your answer is "no," go to Question No. 4a.
3b.   If you find a conditional gift was made, what was the amount of the gift?
*$200,000*
Go to next question.
3c.   If you find by a preponderance of the evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a conditional gift, were Plaintiffs aware that the conditions would not be satisfied on or before January 1, 1995?
Yes *X* No _____
4a.   Do you find by a preponderance of the evidence that Plaintiffs, Mr. and Mrs. Ver Brycke, II, conferred a benefit upon Defendants, Lisa Feehely and John Ver Brycke, IV, on September 30, 1992?
Yes *X* No _____
If your answer is "yes," proceed to the next question.   If your answer is "no," proceed to question No. 5a.
4b.   If you find that Plaintiffs, Mr. and Mrs. Ver Brycke, II, conferred a benefit upon Defendants, Lisa Feehely and John Ver Brycke, IV, on September 30, 1992, do you find by a preponderance of the evidence that the Defendants had knowledge of the benefit?
Yes *X* No _____
If your answer is "yes," proceed to next question.   If your answer is "no," proceed to Question No. 5a.
4c.   If so, do you find by a preponderance of the evidence that the Defendants, Lisa Feehely and John Ver Brycke, IV, retained the benefit under circumstances that make it unjust for the Defendants to retain the benefit without payment of its value to the Plaintiffs, Mr. and Mrs Ver Brycke, III?
Yes *X* No _____
If your answer is "yes," proceed to next question.   If your answer is "no," proceed to Question No. 5a.
4d.   If you find that the Defendants, Lisa Feehely and John Ver Brycke, IV, have been unjustly enriched, what do you find is the amount of such unjust enrichment?
*$200,000.*
5a.   Do you find by a preponderance of the evidence that Counter–Plaintiff, Lisa Feehely, conferred a benefit upon Counter–Defendants, Mr. and Mrs. Ver Brycke, III, by making improvements to the Sherwood Forest cottage:
Yes _____ No *X*
If "yes," proceed to next question.   If "no," proceed to Question No. 6a.
[Question Nos. 5b through 5d omitted.]
6a.   Do you find by a preponderance of the evidence that the Defendants, Lisa Feehely and John Ver Brycke, IV, promised to Plaintiffs, Mr. and Mrs. Ver Brycke, III, that Defendants would purchase Rabbit Hill and live there?
Yes *X* No _____
If your answer is "yes," proceed to the next question.   If your answer is "no," proceed to Question No. 7a.

On November 15, 2001, Judge Nancy Davis–Loomis ordered that the escrow agent pay the Ver Bryckes $200,000 with post judgment interest at a rate of 10% "based upon the jury's findings in favor of the Plaintiffs ... and the Court's own consideration of the evidence." Lisa moved for judgment notwithstanding the verdict. She argued that, if the Ver Bryckes indeed had made a conditional gift, the general three-year statute of limitations in Md.Code (1974, 2002 Repl.Vol.), Section 5–101 of the Courts & Judicial Proceedings Article barred their recovery because the jury found that the Ver Bryckes knew that their conditional gift would not be satisfied on or before January 1, 1995 and the Ver Bryckes did not file suit until 1999.[6] Judge Davis–Loomis denied the motion.

---

> 6b. If you find that the Defendants, Lisa Feehely and John Ver Brycke, IV, made such a promise, do you find by a preponderance of the evidence that the Defendants expected that their promise would induce the Plaintiffs, Mr. and Mrs. Ver Brycke, III, to advance $200,000.00 to the Defendants:
> Yes *X* No _____
> If "yes," proceed to the next question. If your answer is "no," proceed to Question No. 7a.
> 6c. If you find that Defendants, Lisa Feehely and John Ver Brycke, IV, made such a promise, do you find by a preponderance of the evidence that Plaintiffs, Mr. and Mrs. Ver Brycke, III, relied upon such promise to their detriment?
> Yes *X* No _____
> If your answer is "yes," proceed to next question. If your answer is "no," proceed to Question No. 7a.
> 6d. If you find that Plaintiffs, Mr. and Mrs. Ver Brycke, III, detrimentally relied on such promise, what if any damages do you find Plaintiffs suffered?
> *$200,000*
> Proceed to next question.
> 7a. Do you find by a preponderance of the evidence that the Counter–Defendants, Mr. and Mrs. Ver Brycke, III, promised to Counter–Plaintiff, Lisa Feehely, that Counter–Defendants would make an unconditional gift of $200,000.00 to be applied towards the purchase of Rabbit Hill?
> Yes _____ No *X*
> [Question Nos. 7b through 7d, and 8a and 8b omitted.]

**6.** Section 5–101 of the Courts & Judicial Proceedings Article provides:
A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

Moving to alter or amend the judgment, the Ver Bryckes also moved for judgment notwithstanding the verdict. They argued that they, under the unjust enrichment theory, were entitled to a pro rata portion of the Rabbit Hill profits. They also argued that they were entitled to an award of prejudgment interest. Judge Davis–Loomis denied this motion as well.

Lisa appealed. She again maintained that, if the Ver Bryckes indeed had made a conditional gift, the general three-year statute of limitations barred their recovery of that gift because the Ver Bryckes filed suit in 1999 and the jury found that the Ver Bryckes were "aware that the conditions could not be satisfied on or before January 1, 1995." *Ver Brycke v. Ver Brycke,* 150 Md.App. 623, 640, 643, 822 A.2d 1226, 1236, 1237 (2003).

The Ver Bryckes cross-appealed, continuing to argue that the $200,000 was a conditional gift and that the statute of limitations did not bar their claim because they could not have known that their the condition failed until "the sale of the house made the performance of the condition impossible." *Id.* at 640, 822 A.2d at 1236. They also argued that they were entitled to the profits from Rabbit Hill's sale under their unjust enrichment theory. *Id.* at 655, 822 A.2d at 1245.

The Court of Special Appeals reduced the trial court's judgment by $40,000. *Id.* at 658, 822 A.2d at 1246. With respect to the statute of limitations issue, the Court of Special Appeals first explained that Maryland uses the "discovery rule" to determine when the statute of limitations period is "triggered." *Id.* at 641, 822 A.2d at 1236. Under the discovery rule, "before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his or her injury." *Id.* at 641, 822 A.2d at 1237 (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 95–96, 756 A.2d 963, 973 (2000)).

The intermediate appellate court then examined Question 3C, the question posed to the jury raising the statute of limitations issue. *Id.* at 643, 822 A.2d at 1237. Question 3C

asked: "If you find by preponderance of the evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a conditional gift, were Plaintiffs aware that the conditions would not be satisfied on or before January 1, 1995?" *Id.* Noting that the Ver Bryckes argued that the question did not indicate whether the jury concluded that the condition could never be satisfied, the Court of Special Appeals determined that the question was "ambiguous," stating:

> The words "on or before January 1, 1995" could modify the word "satisfied," rather than the word "aware." If the date modifies the word "satisfied," the interrogatory would not resolve the statute of limitations issue, which turned on whether the Ver Bryckes were **aware before January 1, 1995** that the condition of their gift would not be met. The question would only resolve the statute of limitations issue if "on or before January 1, 1995" is interpreted to modify the word "aware."

*Id.* at 643, 822 A.2d at 1237–38 (emphasis in original). The Court of Special Appeals then observed, however, that the Ver Bryckes' counsel interpreted Question 3C as Lisa did, because he urged the jury to answer "no" to the question. *Id.* at 643, 822 A.2d at 1238. The intermediate appellate court furthermore determined that the Ver Bryckes' counsel "knew that the interrogatory was ambiguous before it went to the jury" and, as such, had the burden to object to its inclusion under Maryland Rule 2–522(c).[7] *Id.* at 643–44, 822 A.2d at 1238.

---

7. In November 2001, Maryland Rule 2–522(c) provided:

   Special Verdict. The court may require a jury to return a special verdict in the form of written findings upon specific issues. For that purpose, the court may use any method of submitting the issues and requiring written findings as it deems appropriate, including the submission of written questions susceptible of brief answers or of written forms of the several special findings that might properly be made under the pleadings and evidence. The court shall instruct the jury as may be necessary to enable it to make its findings upon each issue. If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall

Because the Ver Bryckes did not object to the question, the Court of Special Appeals reasoned, they "must live with the consequences of that decision." *Id.* at 644, 822 A.2d at 1238.

Although the Court of Special Appeals concluded that the Ver Bryckes forfeited their right to object to Question 3C, they nevertheless held that the statute of limitations barred only $40,000 of the judgment. *Id.* Before doing so, the intermediate appellate court first rejected the Ver Bryckes' argument that "the statute of limitations on their claim that the condition of the gift failed did not begin to run until the sale of Rabbit Hill made the performance of that condition impossible, rather than at the time they became aware that

---

be deemed to have been made in accordance with the judgment entered.

No party may assign as error the submission of issues to the jury, the instructions of the court, or the refusal of the court to submit a requested issue unless the party objects on the record before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

Md. Rule 2–522(c) (2001). The rule was revised in 2002 and 2003. It now provides:

Verdict containing written findings. The court may require a jury to return a verdict in the form of written findings upon specific issues. For that purpose, the court may use any method of submitting the issues and requiring written findings as it deems appropriate, including the submission of written questions susceptible of brief answers or of written forms of the several special findings that might properly be made under the pleadings and evidence. The court shall instruct the jury as may be necessary to enable it to make its findings upon each issue. If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered.

No party may assign as error the submission of issues to the jury, the instructions of the court, or the refusal of the court to submit a requested issue unless the party objects on the record before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

the condition would not be satisfied." *Id.* In a conditional gift situation, the Court of Special Appeals went on to explain that, under the holding in *Grossman v. Greenstein,* 161 Md. 71, 155 A. 190 (1931), "the right to recover the gift depends on the failure of the condition." *Ver Brycke,* 150 Md.App. at 645, 822 A.2d at 1238. The intermediate appellate court then concluded that the Ver Bryckes' argument was "incompatible" with this teaching because "the jury clearly found that the Ver Bryckes were aware on or before January 1, 1995 of Lisa and John's intent" never to live at Rabbit Hill. *Id.,* 822 A.2d at 1239.

The Court of Special Appeals then distinguished between the three-year statute of limitations applicable to civil actions at law and laches, limitations for equitable actions, which "depend upon the nature of the actions under consideration." *Id.* at 645–46, 822 A.2d at 1239. The intermediate appellate court described the Ver Bryckes as having asserting three claims—conditional gift, unjust enrichment, and promissory estoppel. *Id.* at 647, 822 A.2d at 1240. It then proceeded to classify these claims, concluding that the unjust enrichment and promissory estoppel claims were "traditional equitable actions" and that the conditional gift claim was a legal action. *Id.* at 647–49, 822 A.2d at 1240–41. In order to determine the limitations period for equitable actions, the intermediate appellate court explained that the same limitations period for an "analogous" legal remedy applies. *Id.* at 646, 822 A.2d at 1239 (quoting *Grandberg v. Bernard,* 184 Md. 608, 611, 42 A.2d 118, 119 (1945)(stating "if the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted, equity will follow the law and bar the action")). The Court of Special Appeals then compared all three of the Ver Bryckes' claims with a "legal action for restitution," concluding that:

> Here, the parties' relationship altered when Lisa and John's plans to live at Rabbit Hill did not materialize, and the

Md. Rule 2–522(c) (2004).

condition of the gift failed. Because the gift was money, and the Ver Bryckes were seeking to recover money damages, they could have brought a legal action for restitution. Accordingly ... the statute of limitations applicable to the claim for recovery of a conditional contract, unjust enrichment, and promissory estoppel was the three year statute generally applicable to suits at law under CJ section 5–101.

*Id.* at 650–51, 822 A.2d at 1242.

In this way, comparing the Ver Bryckes' equitable remedies claims for relief to restitution, the Court of Special Appeals then concluded that $40,000 of the $200,000, because it was not secured by the deed of trust, "expired, as a matter of law, before the Ver Bryckes filed their complaint." *Id.* at 651, 822 A.2d at 1242. It concluded the following:

Because the Ver Bryckes failed to file suit within three years of knowing that Lisa and John would not satisfy the condition that they live at Rabbit Hill, we hold that their claim was partially barred by the statute of limitations. The bar of the statute is limited, however, to $40,000 of the $200,000 gift, because that amount was unsecured. With respect to the $160,000 balance of the conditional gift that was subject to a deed of trust, the 12 year statute of limitations applied, and the Ver Bryckes' principal claim in this amount was not time-barred. We also hold that the jury's finding that there was a conditional gift is supported by the evidence. Regarding the Ver Bryckes' cross-appeal, we hold that the Ver Bryckes are not entitled to disgorgement of profits or prejudgment interest as a matter of right.

*Id.* at 627–28, 822 A.2d at 1228. The Court of Special Appeals reached this result by explaining that, in addition to a suit in law or in equity, the Ver Bryckes also possessed a remedy provided by the deed of trust. *Id.* at 651, 822 A.2d at 1242. As that court explained, the "deed of trust recites that it secures unto the Ver Bryckes the sum of $160,000, and the debt is 'evidenced by Borrower's note ..., which 'provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 1, 2022.'" *Id.* Determining that a

promise incident to a conditional gift may be secured by a mortgage or deed of trust, the Court of Special Appeals then concluded that the Ver Bryckes were entitled to $160,000 because that amount of their conditional gift of $200,000 to John and Lisa was secured by the deed of trust. *Id.* at 655, 822 A.2d at 1245. Because a deed of trust is an instrument under seal, the Court of Special Appeals explained, the twelve-year statute of limitations period under Section 5–102(a) of the Courts & Judicial Proceedings Article applied.[8] *Id.* at 653, 822 A.2d at 1244. The Court of Special Appeals also concluded that, because Lisa did not ask the jury to decide whether the conditional gift was secured by the deed of trust, she had the burden of placing that issue before the jury under Maryland Rule 2–522(c). *Id.* at 654, 822 A.2d at 1244.

Finally, the Court of Special Appeals turned to the Ver Bryckes' claims for disgorgement of profits and for prejudgment interest, rejecting both of them. With respect to the Ver Bryckes' disgorgement of profits claim, the intermediate appellate court observed that the jury had implicitly rejected the Ver Bryckes' theory that John and Lisa had been unjustly enriched when they made a profit on Rabbit Hill when it determined that the Ver Bryckes were entitled to $200,000, the precise amount, without any interest, they had given to John and Lisa. *Id.* at 656, 822 A.2d at 1245. With respect to the Ver Bryckes' claim for prejudgment interest, the Court of Special Appeals noted that the parties had "stipulated that the judge would be the trier of fact" on this issue, and it was in the judge's discretion to decline to make such an award. *Id.* at 656, 658, 822 A.2d at 1245–46.

On June 19, 2003, Lisa filed in this Court a petition for writ of certiorari, and, on June 25, 2003, the Ver Bryckes filed a cross petition for writ of certiorari. We granted both petitions on August 26, 2003. *Ver Brycke v. Ver Brycke,* 376 Md. 543, 831 A.2d 3 (2003). Because we stated the questions presented in full earlier, we will summarize them here. Lisa asks us to consider whether an unwritten agreement involving a condi-

---

8. *See* footnote 1 *supra.*

tional promise satisfies the Statute of Frauds and whether a conditional promise secured by a deed of trust is valid and thus is afforded the twelve-year statute of limitations period for documents under seal. The Ver Bryckes ask us to consider whether the three-year statute of limitations barred part of their claim; whether the limitations period was left to the discretion of the trial judge under Maryland Rule 2–522(c); and whether they were entitled to prejudgment interest as a matter of right.

## II. Discussion

Lisa contends that the Court of Special Appeals erred when it determined that a promise, other than the payment of money, "inferred from the circumstances" may be secured by a mortgage or deed of trust so as to trigger the twelve-year statute of limitations. In addition, Lisa maintains that the twelve-year statute of limitations does not apply to "an alleged oral agreement, condition, or promise, executory in nature, that is not identified as consideration as an obligation specified in a deed of trust securing land."

The Ver Bryckes contend that the Court of Special Appeals erred in its conclusion that the three-year statute of limitations barred part of their claim. The Ver Bryckes argue that the trial judge "gave no instructions on any applicable statute of limitations." For this reason, under Maryland Rule 2–522(c), "the statute of limitations issues were reserved to the trial judge," whose findings are considered to have been made in accordance with the judgment entered. The Ver Bryckes maintain that Lisa's statute of limitations defense depended upon "Lisa establishing that the [Ver Bryckes] knew or should have known at least three years prior to the filing date of this action that John and Lisa would not keep their promise to live at Rabbit Hill." According to the Ver Bryckes, the trial court properly rejected Lisa's statute of limitations defense because there was ample evidence at trial to suggest that John and Lisa were still considering the possibility of living at Rabbit Hill as late as August 1997, which was within the three-year limitations period when the parents filed the action in 1999.

## A. The Nature of the Gift

■ We will begin by examining the nature of the Ver Bryckes' transfer of $200,000 to John and Lisa. At trial, the Ver Bryckes based their claims of unjust enrichment and promissory estoppel on the theory that they gave John and Lisa a conditional gift. Lisa argued that the $200,000 was an absolute gift, and, thus, there was no unjust enrichment or detrimental reliance. The jury agreed with the Ver Bryckes, concluding that the Ver Bryckes gave John and Lisa a conditional gift of $200,000, and this finding was adopted by the trial judge. On appeal, the Court of Special Appeals agreed. We agree, also, that the $200,000 was a conditional gift. We disagree, however, with several conclusions that the Court of Special Appeals reached regarding this point, particularly with respect to its characterization of the Ver Bryckes' claims.

■ We first observe that, generally, *inter vivos* gifts are absolute and, in order to be valid, they must be irrevocable. *Park Station Ltd. P'ship v. Bosse,* 378 Md. 122, 131, 835 A.2d 646, 651 (2003)(explaining that "[t]he requirements for a valid *inter vivos* gift are an intention on the part of the donor to transfer the property, a delivery by the donor and an acceptance by the donee [and that] delivery must transfer the donor's dominion over the property")(quoting *Rogers v. Rogers,* 271 Md. 603, 607, 319 A.2d 119, 121 (1974)). Although this is the general rule, in limited instances, "[a] donor may limit a gift to a particular purpose, and render it so conditioned and dependent upon an expected state of facts that, failing that state of facts, the gift should fail with it." *Grossman v. Greenstein,* 161 Md. 71, 73, 155 A. 190, 191 (1931)(ordering the return of the donor's gift of $1,000 in a bank account to his daughter and prospective son-in-law because the money was a gift conditioned upon the marriage, which did not occur because the prospective son-in-law broke the engagement); *accord In re Stoltz,* 283 B.R. 842, 846 (Bankr.D.Md.2002)(holding that the diamond ring the debtor received was given as gift in contemplation of marriage, and, thus, was a conditional gift); *Singer v. Singer,* 636 A.2d 422, 425–26 (D.C.1994)(observing

that a gift of a house might have been a conditional gift in contemplation of marriage and remanding for further proceedings to determine the nature of the gift).

Although the conditional gift doctrine has been used most often in the context of gifts given with the expectation that marriage will occur, *see* 23 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 62:28 (4th ed 2002), it has been extended to other familial and charitable contexts. *See Cowley v. Cowley,* 400 So.2d 381, 382 (Ala.1981)(concluding that a gift conditioned upon the donee's agreement to use money for the donor's surgery did not make the gift invalid); *Ball v. Hall,* 129 Vt. 200, 274 A.2d 516, 520 (1971)(explaining that, in a situation where the donors' gifts to the town were conditioned on the town maintaining the high school, "[a] gift may be conditioned upon the donee's performance of specified obligations or the happening of a certain event [and that if] the obligation is not performed, the donor is entitled to restitution"); *McClure v. McClure,* 870 S.W.2d 358, 361 (Tx.App.1994)(holding in a divorce dispute regarding a husband's gift to wife to help her pay off her condominium, that, "[i]f a gift is made upon a condition, then failure of, violation of, or refusal to perform the condition by the donee constitutes good ground for revocation of the gift by the donor"); *Courts v. Annie Penn Memorial Hosp., Inc.,* 111 N.C.App. 134, 431 S.E.2d 864, 867–68 (1993)(applying the conditional gift doctrine in the context of determining whether a donor's gift to a hospital included the condition that the hospital establish a foundation in her grandfather's name); *Zirngibl v. Zirngibl,* 165 Wis.2d 130, 477 N.W.2d 637, 640 (1991)(explaining, where a wife had given the husband funds to buy real estate, that "[a] gift may be conditioned upon some act by the donee, and, if the condition is not fulfilled, the donor may recover the gift"); *see also* RESTATEMENT (FIRST) OF RESTITUTION § 58 (1937). Here, the jury and the trial judge agreed with the parents that they gave John and Lisa a gift of $200,000 based upon the condition that John and Lisa would live at Rabbit Hill.

■ The Court of Special Appeals erred, however, in several respects regarding the precise nature of the Ver Bryckes' conditional gift. It made its first mistake when it concluded that the jury "found in favor of the Ver Bryckes on three causes of action—conditional gift, unjust enrichment, and promissory estoppel." *Ver Brycke*, 150 Md.App. at 647, 822 A.2d at 1240. As the trial court's judgment order indicates, the Ver Bryckes prevailed under two theories, unjust enrichment and promissory estoppel.[9] The Ver Bryckes' conditional gift theory supported both of these claims, but "conditional gift" was not itself a separate claim in this case. For this reason, it was not necessary for the Court of Special Appeals to undertake, as it did, an extensive analysis of whether a suit to recover a conditional gift is a legal or equitable claim. *See id.* at 647–51, 822 A.2d at 1240–42.

■ Moreover, when the Court of Special Appeals did undertake its analysis, it did so incorrectly. Because the Court of Special Appeals had concluded that conditional gift was a separate claim, it endeavored to determine whether it was an equitable or legal action in order to determine the appropriate limitations period to apply. *See id.* at 646–47, 822 A.2d at 1239–40. The Court of Special Appeals began its analysis of distinguishing between legal and equitable claims

---

9. We observe that the Ver Bryckes' unjust enrichment and promissory estoppel claims, which are quasi-contract claims, would have been untenable had they argued that a contract had existed between them and John and Lisa. As we explained in *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (2000), "[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Id.* at 96, 747 A.2d at 607 (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 776, 471 A.2d 1121, 1126 (1984)). In other words, an unjust enrichment claim ordinarily fails if the claim is based on a written contract. The exceptions to this rule are limited, as "courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual recision of the contract, when recision is warranted, or when the express contract does not fully address a subject matter." *Id.* at 100, 747 A.2d at 608–09 (footnotes omitted).

by referring, appropriately enough, to Professor Dobbs' LAW
OF REMEDIES (2d ed.1993):

> *Dobbs* identifies two primary tests for determining wheth-
> er a claim is equitable or legal:
>> *First,* a claim could be deemed equitable if it sought a
>> coercive remedy like injunction, otherwise not. *Second,* a
>> claim could be deemed equitable if the plaintiff sought to
>> enforce a right that was originally created in the equity
>> courts, or a right that was traditionally decided according
>> to equitable principles.

*Id.* at 647, 822 A.2d at 1240 (quoting DAN. B. DOBBS, LAW OF
REMEDIES § 2.1(2) (2d ed.1993)). The Court of Special Ap-
peals then asserted that the second test is the one most often
applied, noting, that "Dobbs observes that '[o]verwhelmingly,
courts characterize claims according to the remedies sought
rather than according to subject matter or substantive rules
involved.'" *Id.* As we shall explain, it is at this point the
Court of Special Appeals should have stopped, as Maryland,
like the majority of courts, characterizes most of its equitable
claims according to the remedies sought by the parties.
*Goldsborough v. County Trust Co.,* 180 Md. 59, 61, 22 A.2d
920, 921 (1941)(explaining that the party "must show the
necessity for his resorting to the remedy" when seeking equity
jurisdiction).

The Court of Special Appeals, however, continued with its
discussion, classifying unjust enrichment and promissory es-
toppel as "traditional equitable actions," and noting that there
was no Maryland case law on this point with respect to
conditional gifts. *Ver Brycke,* 150 Md.App. at 647, 822 A.2d at
1240. It then turned to the only out-of-state case regarding
conditional gifts it found helpful, noting that the Illinois appel-
late court listed "rescission and restitution based upon the
failure of a conditional gift" as one of the plaintiff's equitable
theories. *Id.* at 647–48, 822 A.2d at 1240 (citing *Wagener v.
Papie,* 242 Ill.App.3d 354, 182 Ill.Dec. 417, 609 N.E.2d 951, 955
(1993)). Rejecting that court's suggestion that a suit for
recovery of a conditional gift sounded in equity and concluding
that there was, thus, a "dearth of authority" on this issue, the

Court of Special Appeals determined that it must apply both "Dobbs" tests:

> Applying the first part of the *Dobbs* two-part test, we find one Maryland case brought on a conditional gift theory that was held to be properly framed in equity, presumably because it sought to clear title to real property. Out-of-state suits to recover title to real property based on conditional gifts also have been held to be equitable. These cases are more readily classified as equitable due the remedy sought—changing title to real property—rather than the equitable basis of the substantive theory of recovery.
>
> The Ver Bryckes sought recovery from the escrowed proceeds of the Rabbit Hill sale, as well as a personal judgment against Lisa and John. Because the remedy they sought was not coercive, their claims for relief seem to fall on the legal side of the ledger.
>
> Thus, there are three bases of recovery, two brought under traditional equitable theories, all of which request relief that is legal in nature. We hold that the conditional gift cause of action was legal, and the other two were equitable, because they are traditionally based in equity.

*Id.*, at 648–49, 822 A.2d at 1240–41 (citations and footnote omitted). In essence, when the Court of Special Appeals applied both "Dobbs tests" (essentially, in fact, merging the two tests into one two-part test), it obfuscated what should have been the subject of its focus, namely the remedy that the Ver Bryckes sought in their suit.

As the intermediate court stated, to characterize whether a claim sounds in law or equity is a "murky undertaking." *Id.* at 647, 822 A.2d at 1240; *see also Kann v. Kann,* 344 Md. 689, 699, 690 A.2d 509, 514 (1997)(noting that "Professors Wright and Miller have said that '[d]etermining which actions belong[ ] to law and which to equity for the purpose of delimiting the jury trial right continues to be one of the most perplexing questions of trial administration.' ").[10] In this case,

---

**10.** The distinction between actions at law and actions in equity is important because claimants with equitable claims do not have a right

the Ver Bryckes sought to recover the $200,000 they had given to John and Lisa. Although the Ver Bryckes relied on unjust enrichment and promissory estoppel, two "traditionally equitable" doctrines, and requested the remedy of restitution, an equitable remedy, their claims sound in law because they seek the repayment of money. We explain.

We repeatedly have stated that the strictures of common law pleading, whereby the causes of action pled define the action, have been replaced by fact-based pleading so that remedies sought serve to delineate the type of action, whether it be in law or equity.[11] *Scott v. Jenkins,* 345 Md. 21,

---

to a jury trial. *Murphy v. Edmonds,* 325 Md. 342, 371, 601 A.2d 102, 116 (1992)(explaining that "the jury trial right in civil cases relates to 'issues of fact' in legal actions [and it] does not extend to issues of law, equitable issues, or matters which historically were resolved by the judge rather than by the jury").

11. In *Manning v. Potomac Elec. Power Co.,* 230 Md. 415, 187 A.2d 468 (1963), we provided a brief history of why equity jurisprudence developed around the remedy sought: At a very early date, a procedure was established in the common-law courts of England, whereby a small number of "forms of actions" were furnished as the exclusive means of seeking redress in those courts. Frequently, where a litigant was justly entitled to relief, the facts of his case failed to fall within one of these "forms of action," and the case was consequently dismissed. The English common-law judges, for the main part, set themselves firmly for a strict adherence to these arbitrary and technical forms, and opposed any innovations that might have brought the law as a whole into harmony with justice and equity. Also at a very early date, the Crown (aided by the Special Council, the predecessor of the Privy Council) began to exercise a prerogative, which embraced a judicial function over matters that did not, or could not, come within the jurisdiction of the ordinary courts. This extraordinary or prerogative judicial function, originally exercised by the Crown, afterwards was delegated (in addition to his manifold other duties, which included the exercise of ordinary—*i.e.,* common-law jurisdiction in his court) to the Chancellor. This extraordinary equitable jurisdiction of the Chancellor, although ill defined in its beginning, grew rapidly, and by the time of the reign of Edward III (1312 to 1377) the Court of Chancery was recognized as the ordinary tribunal wherein to decide causes which required an exercise of the prerogative jurisdiction, and the granting of special remedies which the common-law courts could not, or· would not, give. And equitable jurisdiction has grown through the years until it is now based upon certain and definite rules, principles and doctrines of fairness, justice and equity.

27–28, 690 A.2d 1000, 1003 (1997)(noting that Maryland "abandoned the formalities of common law pleading long ago" and that Maryland Rule 2–303(b) establishes that "[a] pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense . . ."); *Higgins v. Barnes*, 310 Md. 532, 535 n. 1, 530 A.2d 724, 725 n. 1 (1987)("[O]ur concern is with the nature of the issues legitimately raised by the pleadings, and not with the labels given to the pleadings."). We also have held that the parties' characterization of their claims does not determine equity jurisdiction; rather, as Dobbs taught, equity jurisdiction is determined either by whether the parties' claims have historically sounded in equity or by the kind of remedy the parties sought. *Manning*, at 420–21, 187 A.2d at 471–72.[12] Because an historical analysis may be a difficult undertaking when the claim is not one traditionally recognized as equitable, the remedy sought by the claimant is often the court's focus. *See Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729, 736 (1970); *see also Martin v. Howard County*, 349 Md. 469, 484, 709 A.2d 125, 133 (1998)(explaining that the "ground of equity jurisdiction" arises when the claimant is "denied a remedy at law" and that an eviction action traditionally sounded at law); *Goldsborough*, 180 Md. at 61, 22 A.2d at 921 (explaining that the party "must show the necessity for his resorting to the remedy" when seeking equity jurisdiction).

---

*Id.* at 420–21, 187 A.2d at 471–72.

**12.** As we explained in *Manning*, in order for the maxim "equity will not suffer a wrong to be without a remedy" to define whether a claim is equitable in nature, the following limitations defined by Mr. Pomeroy in Volume 2 of Equity Jurisprudence §§ 423, 424 apply:

In order that the principle may apply, one of three facts must exist, viz., either. 1. The right itself must be one not recognized as existing by the law; or 2. The right existing at the law, the remedy must be one which the law cannot or does not administer at all; or 3. The right existing at the law, and the remedy being one which the law gives, the remedy *as administered by the law* must be inadequate, incomplete, or uncertain. Of these three alternatives, the first and second denote the exclusive jurisdiction of equity; the third, the concurrent jurisdiction.

230 Md. at 421–22, 187 A.2d at 472.

The Ver Bryckes sought to recover the $200,000 they had given to John and Lisa. Quoting Dobbs' LAW OF REMEDIES, we also have explained that, although the "substantive basis" of the law of restitution "is related to substantive equity," "[r]estitution claims for money are usually claims 'at law.'" *Bennett Heating & Air Conditioning, Inc., v. NationsBank of Maryland*, 342 Md. 169, 180, 674 A.2d 534, 539 (1996)(quoting DAN B. DOBBS, LAW OF REMEDIES § 4.1(1), at 556 (2d ed.1993)); [13] *see also Luskin's, Inc. v. Consumer Protection Div.*, 353 Md. 335, 383, 726 A.2d 702, 726 (1999)(noting that "[r]estitutionary recoveries often amount to about the same as the plaintiff's losses, and thus serve many of the compensatory purposes served by a damages recovery"); *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151, 757 A.2d 108, 113 (2000)(observing that "[a] person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment")(quoting RE-STATEMENT (SECOND) OF RESTITUTION § 1 (Tentative Draft No. 1, 1983)). Therefore, the Court of Special Appeals should have concluded that the Ver Bryckes two claims—unjust enrichment and promissory estoppel—were claims at law because they were claims seeking the remedy of restitution for money.

## B.  Statute of Limitations

We agree with the Ver Bryckes that the Court of Special Appeals incorrectly concluded that the three-year stat-

---

**13.**  Dobbs' LAW OF REMEDIES § 2.6(3)(2d ed.1993) explains how "money claims for restitution" are remedies that enable courts to characterize such claims as legal ones:

*Money claims for restitution.*  Some money claims are not "damages" representing the plaintiff's loss but "restitution" representing the defendant's unjust gains in a transaction.... [S]ome restitution claims were equitable. However, many were not. Many restitution claims were brought under the common law writ of assumpsit, using its common counts such as the count for money had and received. These claims are claims at law in every sense, first because they seek simply money relief, and second because they were historically brought in the separate law courts.

ute of limitations period pursuant to Section 5–101 of the Courts & Judicial Proceedings Article barred $40,000 of the Ver Bryckes' claim and that the twelve-year statute of limitations period pursuant to Section 5–102 of the Courts & Judicial Proceedings Article did not bar $160,000 of their claim.[14] As we shall explain, the Court of Special Appeals missed the mark for two reasons. First, in a conditional gift situation, the statute of limitations begins to run when the donor knew or should have known the condition failed. Second, the Court of Special Appeals incorrectly interpreted an ambiguous interrogatory on the jury verdict sheet as establishing when the Ver Bryckes knew that Lisa and John would never move into Rabbit Hill.

Under Maryland's "discovery rule," the three-year statute of limitations period begins to toll when the "plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 95–96, 756 A.2d 963, 973 (2000); *see also Newell v. Richards,* 323 Md. 717, 723–24, 594 A.2d 1152, 1155 (1991)(explaining that "the discovery rule was applicable to civil actions generally, and that a plaintiff must have knowledge, either implied or express, in order to trigger the running of the statute of limitations"). In addition, the party raising the defense of the statute of limitations has the burden of showing that the defense has merit. *Newell,* 323 Md. at 725, 594 A.2d at 1156.

In this case, in order to trigger the statute of limitations, Lisa had the burden to show that the Ver Bryckes knew or, through the exercise of due diligence, should have discovered more than three years prior to March 23, 1999, the date the Ver Bryckes filed their claim, that John and Lisa never would fulfill the condition of moving into Rabbit Hill. Lisa attempts to do so by contending that one of the jury questions, "Question 3C," required the jury to determine whether the Ver Bryckes were barred by the three-year statute of limitations.

---

14. *See* footnote 2 *supra.*

Question 3C asked: "If you find by a preponderance of the evidence that the Plaintiffs, Mr. and Mrs. Ver Brycke, III, made a conditional gift, were Plaintiffs aware that the conditions would not be satisfied on or before January 1, 1995?" Because the jury answered "yes" to this question, Lisa argues that the jury found that the three-year limitations barred the Ver Bryckes' claim.

We observe at the outset that we have not found an instance in Maryland law, and have been referred to none, regarding the limitations period for conditional gifts. In a conditional gift situation, the donor's right to recover the gift depends on the failure of the condition. *Grossman*, 161 Md. at 73, 155 A. at 191. A condition is a "future and uncertain event on which the existence or extent of an obligation or liability depends; an uncertain act or event that triggers or negates a duty to render a promised performance." BLACK'S LAW DICTIONARY 288 (7th ed.1999). The jury concluded that John and Lisa accepted the $200,000 on the condition that they would move into Rabbit Hill. When John and Lisa sold Rabbit Hill, they negated the possibility of ever fulfilling their obligation to move into Rabbit Hill. As such, the condition failed, triggering the Ver Bryckes' right to recover their conditional gift and the statute of limitations.

In addition, we also disagree with Lisa because, as the Court of Special Appeals pointed out, the jury's affirmative answer to Question 3C may or may not indicate that it concluded that the Ver Bryckes knew they had a claim against John and Lisa on or before January 1, 1995:

> The words "on or before January 1, 1995" could modify the word "satisfied," rather than the word "aware." If the date modifies the word "satisfied," the interrogatory would not resolve the statute of limitations issue, which turned on whether the Ver Bryckes were **aware before January 1, 1995** that the condition of their gift would not be met.

*Ver Brycke*, 150 Md.App. at 643, 822 A.2d at 1237–38 (emphasis in original). In other words, Question 3C could be interpreted as asking the jury to determine whether the Ver

Bryckes knew that John and Lisa were not going to move into Rabbit Hill by January 1, 1995. This is not the same, however, as the jury concluding that the Ver Bryckes knew by January 1, 1995, that John and Lisa *never* planned to move into Rabbit Hill, a finding that indeed would have triggered the statute of limitations period.

We, thus, disagree with the Court of Special Appeals' conclusion that, in spite of the fact that it found Question 3C to be ambiguous, Question 3C invoked the three-year statute of limitations period. As the Court of Special Appeals itself pointed out, the jury may have simply found that the Ver Bryckes knew that John and Lisa would not move into Rabbit Hill by January 1, 1995, a conclusion that does not indicate one way or the other that the Ver Bryckes knew that their condition would never be satisfied.

Because Lisa relies exclusively on Question 3C to argue that the statute of limitations period began to toll on January 1, 1995, we conclude that she did not meet her burden to show that the Ver Bryckes knew or should have known that she and John would not meet the condition of moving into Rabbit Hill. Under the circumstances herein, we also do not believe the condition failed until the property was sold. We, therefore, reverse the Court of Special Appeals and affirm the trial court's judgment in favor of the Ver Bryckes for $200,000.[15]

---

**15.** As we have explained, we disagree with Lisa that the jury found that the statute of limitations period began to toll when it answered in the affirmative to Question 3C. We also note that, because the jury did not address the limitations question in its special verdict, the statute of limitations issue was reserved to Judge Davis–Loomis under Maryland Rule 2–522(c), which governs special verdicts. If a relevant issue is not submitted to the jury, Rule 2–522(c) provides:

If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered.

Md. Rule 2–522(c)(2001). In other words, under Rule 2–522(c), if an issue that could be heard by the jury is not before it, a party must

## C. Pre-judgment Interest

We agree with the Court of Special Appeals that the Ver Bryckes are not entitled to pre-judgment interest. The intermediate appellate court correctly observed that pre-judgment interest as a matter of right is the exception rather than the rule, *see Buxton v. Buxton,* 363 Md. 634, 770 A.2d 152 (2001), and that "[w]hether a party is entitled to pre-judgment interest generally is left to the discretion of the fact finder." *Ver Brycke,* 150 Md.App. at 656, 822 A.2d at 1246 (citing *I.W. Berman Props. v. Porter Bros., Inc.,* 276 Md. 1, 24, 344 A.2d 65, 79 (1975)). As we explained in *Buxton,* "[p]re-judgment interest is allowable as a matter of right when 'the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to judgment so that the effect of the debtor's withholding payment was to

demand that it be submitted to the jury before the jury retires to deliberate; otherwise, the issue is waived. Any issues not submitted to the jury are decided by the court. *Edwards v. Gramling Engineering Corp.,* 322 Md. 535, 549, 588 A.2d 793, 800 (1991). In the absence of a finding by the trial court, the rule requires us to presume a finding consistent with the trial court's judgment.

Therefore, as Question 3C is the only question submitted to the jury that could be plausibly related to the statute of limitations issue, we conclude that the question of whether the Ver Bryckes knew or should have known that John and Lisa would not fulfill the condition to live at Rabbit Hill within the three-year limitations period was left to Judge Davis–Loomis. Furthermore, under the rule, we must presume that the trial court's judgment rests on consistent findings. *Id.* at 550, 588 A.2d at 801. Presuming that her findings were consistent with her judgment, we thus conclude that, when Judge Davis–Loomis entered a judgment against John and Lisa for $200,000, she implicitly determined that the statute of limitations did not bar the parents' claims.

In addition, we note that both parties waived their right to object to Question 3C when the questions were submitted to the jury. "It is counsel's responsibility to assure that all critical issues are submitted to the jury." *Id.* at 549, 588 A.2d at 800. If counsel does not do so, his or her objections are waived. *Id.* The Court of Special Appeals was incorrect, however, when it concluded that the Ver Bryckes were attempting to object to Question 3C after they had waived their right to do so. *Ver Brycke,* 150 Md.App. at 644, 822 A.2d at 1238. Instead, the Ver Brycke simply argued on appeal that the jury's answer did not necessitate the finding that the jury concluded that the statute of limitations barred the Ver Bryckes' claim. This is much different from objecting to Question 3C as it was formulated.

deprive the creditor of the use of a fixed amount as of a known date.'" 363 Md. at 656, 770 A.2d at 165. Here, applying *Buxton*, the Court of Special Appeals rightly determined that John and Lisa's obligation to repay the Ver Bryckes was uncertain prior to the date of judgment. As such, the trial judge was left to her discretion to determine whether pre-judgment interest was warranted. We hold that she did not abuse her discretion when she denied the Ver Bryckes' pre-judgment interest.

### III. Conclusion

In a conditional gift situation, the donor's right to recover the gift depends on the failure of the condition, and the statute of limitations period begins to toll at this time. In addition, when characterizing whether a claim sounds in law or in equity, the determination is dependent upon the remedies sought. Finally, we affirm the trial court's denial of the Ver Bryckes' claim for pre-judgment interest.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

WILNER, J., concurs.

Concurring Opinion by WILNER, J.

I concur in the judgment. I do not agree with the Court's conclusion, apparently one of law, that the condition did not fail until the property was sold, especially as the Court does not indicate whether, by "sold," it means contracted for sale or actually conveyed. The condition was that John and Lisa move into Rabbitt Hill, and there was evidence from which the jury, or the judge, could have found that the Ver Bryckes knew, or had good reason to know, before the property was "sold" that John and Lisa were not, in fact, going to move into it. The focus should be on when that knowledge existed, not

when it became legally or even practically impossible for the condition to be met.

I agree with the Court's ultimate judgment because the evidence would support a finding that such knowledge did not exist until a point within three years of the filing of the suit— *i.e.*, a time after March 23, 1996. It may have come when John and Lisa separated in 1997, or when divorce proceedings began in January, 1998. It may have been manifest when the Ver Bryckes decided to record the deed of trust in July, 1998, and it certainly would have existed when John and Lisa contracted to sell the property in November, 1999. Whether the Ver Bryckes knew or had reason to know prior to March 23, 1996 that the condition would not be met was in substantial dispute. As the jury did not clearly answer that question because of the ambiguous wording of Question 3C, the judge had to make that call, and I would not disturb the judge's decision.